No. 80–6819. McCRAY v. FLORIDA. Sup. Ct. Fla. Certiorari denied.

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976), I would grant certiorari and vacate the death sentence in this case.

JUSTICE MARSHALL, dissenting.

As I have consistently stated, I believe that a decision to impose the death penalty is always cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments. See *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976). Thus, I would grant certiorari in this case and vacate the judgment

insofar as it leaves undisturbed the death sentence. I would also grant certiorari on an additional ground. Petitioner argues that the death penalty has been arbitrarily and capriciously imposed in this case, because the trial judge rejected the jury's recommendation that he be sentenced to life imprisonment. According to petitioner, the jury should not have been overruled, since its recommendation was not unreasonable. In my view, there is substantial merit to this claim.

## I

The Florida capital punishment statute, Fla. Stat. § 921.141 (1979), which this Court approved in *Proffitt* v. *Florida*, 428 U. S. 242 (1976), establishes a three-level review system. After a defendant is found guilty of a capital offense, an evidentiary hearing is held before the judge and the jury to determine the sentence. At the conclusion of the hearing, the jury considers whether "sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist," and based on these considerations, "whether the defendant should be sentenced to life imprisonment or death." §§ 921.141(2)(b) and (c).

The jury's verdict is advisory only; the actual sentence is imposed by the trial judge after he conducts his own review of the aggravating and mitigating circumstances. However, the Florida Supreme Court has stated that the jury recommendation is entitled to substantial weight. "In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." *Tedder* v. *State*, 322 So. 2d 908, 910 (1975). Accord, *Thompson* v. *State*, 328 So. 2d 1, 5 (Fla. 1976). See also *Proffitt* v. *Florida, supra.* Judges are given the power to override jury verdicts only because of the possibility that in isolated cases juries will unreasonably reject death. See *Chambers* v. *State*, 339 So. 2d 204, 208–209 (Fla. 1976).

The statute provides for automatic review by the Florida Supreme Court of all cases in which a death penalty has been imposed. § 921.141(4). The statute itself does not require any specific form of review. The court has stated, however, that its function is to ensure that similar results are reached in similar cases. "If a defendant is sentenced to die, this Court can review that case in light of the other decisions and determine whether or not the punishment is too great." *State* v. *Dixon*, 283 So. 2d 1, 10 (1973).

If Florida is to use a system of advisory verdicts, it must administer that system with scrupulous fairness. Having stated that it will reject only those recommendations that are unreasonable, it must conscientiously adhere to that standard. The trial judge or the Florida Supreme Court may not allow a reasonable jury recommendation to stand in some cases, and substitute their own judgment in others. Where matters of life and death are concerned, such a lack of predictability cannot be tolerated. This Court has repeatedly emphasized the importance of consistency in capital cases. See, *e. g.*, *Gardner* v. *Florida*, 430 U. S. 349, 357–358 (1977); *Woodson* v. *North Carolina*, 428 U. S. 280, 302–303 (1976); *Jurek* v. *Texas*, 428 U. S. 262, 274 (1976); *Proffitt* v. *Florida*, *supra*, at 259–260; *Gregg* v. *Georgia*, *supra*, at 188–189; *Furman* v. *Georgia*, 408 U. S. 238, 309–310 (1972).

## II

My review of the record in this case leads me to believe that the trial judge may have improperly substituted his own judgment for that of the jury in deciding to impose the death penalty. Petitioner was tried for the murder of a 67-year-old woman. After the close of the evidence, the jury returned a verdict of guilty, but recommended a life sentence. The trial judge rejected this recommendation and entered a judgment calling for the death sentence. He found three statutory aggravating circumstances. First, because peti-

tioner had recently pleaded guilty to an unrelated assault charge, he was a convicted felon. See Fla. Stat. § 921.141(5)(b) (1979). Second, the murder was "especially heinous, atrocious, or cruel." § 921.141(5)(h). Third, the murder took place during the commission of a rape. § 921.141(5)(d). The trial judge stated that these aggravating circumstances outweighed any mitigating circumstances. He rejected evidence submitted by petitioner to show that at the time of the crime he was "under the influence of extreme mental or emotional disturbance," a statutory mitigating circumstance. § 921.141(6)(b).

The Florida Supreme Court affirmed the trial judge's decision to override the jury's advisory verdict. *McCrae (sic)* v. *State*, 395 So. 2d 1145 (1980). It agreed that the guilty plea to the unrelated felony charge could be treated as a felony conviction, and thus constituted an aggravating circumstance under the death penalty statute. It also agreed that the crime was especially heinous, atrocious, or cruel, and that it had taken place during the commission of a rape. The Supreme Court reasoned that the jury must have decided to recommend life imprisonment because it believed that petitioner was under the influence of extreme mental or emotional disturbance at the time the crimes were committed. Like the trial judge, however, the State Supreme Court concluded that the evidence submitted by petitioner could not support a conclusion that this mitigating circumstance actually existed.

I am extremely troubled by the trial judge's decision to override the jury's advisory verdict, and by the Florida Supreme Court's affirmance of that decision. A reasonable jury unquestionably could have concluded that the mitigating circumstances outweighed the aggravating circumstances. Petitioner offered substantial evidence in support of his claim that he acted under the influence of extreme mental or emotional disturbance. A psychiatrist, Dr. Clarence Schlit, tes-

tified that petitioner was subject to attacks when under emotional stress that prevented him from exercising a normal degree of restraint. He further stated that although petitioner was not insane, he suffered from a chronic schizophrenic illness. Dr. Schlit's testimony was confirmed by two court-appointed psychiatrists who examined petitioner to determine whether he was competent to stand trial. Dr. Mordecai Haber observed that petitioner suffered from a disorder that contributed to an explosive personality. He concluded that although petitioner was competent, he was too dangerous to be at liberty. Dr. Thomas Haagland found that although petitioner had control of himself while sober, he released "an underlying epileptic furor" whenever he was intoxicated. 395 So. 2d, at 1147–1148.

Other evidence in the record lends support to petitioner's claim that he was emotionally disturbed at the time of the murder. Petitioner was confined in a psychiatric ward while in the United States Army. Record 883. Prior to trial he made at least three suicide attempts. *Id.*, at 883, 884, 1005. He frequently hears voices, and regards this as normal. *Id.*, at 1006. He suffers from "organic brain syndrome with epilepsy." *Id.*, at 1022. These findings were confirmed by an electroencephalogram. *Ibid.*

The trial judge and the Florida Supreme Court unfairly discounted this evidence. They both emphasized that Dr. Schlit was unwilling to testify that it was a "medical certainty" that petitioner acted under the influence of extreme mental disturbance. See 395 So. 2d, at 1148. This does not mean, however, that it was unreasonable for the jury to conclude, on the basis of all the evidence, that petitioner was emotionally disturbed at the time of the murder.

I also think it quite possible that the jury was not convinced that this was an "especially heinous, atrocious, or cruel" murder within the meaning of the death penalty statute. It is true that there was evidence suggesting that the

victim was beaten before she died. However, it was not possible to determine how quickly the victim died, or how much she suffered. A reasonable jury could have found that the murder was not heinous. The Florida Supreme Court has stated that the "heinous, atrocious, or cruel" standard applies only to those murders that are "extremely wicked" and "shockingly evil," or "designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others." *State* v. *Dixon*, 283 So. 2d, at 9.

Since a jury could reasonably have concluded that the mitigating circumstances outweighed the aggravating circumstances, the trial judge improperly rejected its recommendation. He substituted his own judgment concerning the proper sentence, in disregard of the standards set forth by the Florida Supreme Court. Under the circumstances, the imposition of the death sentence was arbitrary and capricious.