492 So.2d 1063 (1986)
Derrick Tyrone SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 64670.
Supreme Court of Florida.
July 17, 1986.
Rehearing Denied September 10, 1986.
*1064 James Marion Moorman, Public Defender, and W.C. McLain, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Jim Smith, Atty. Gen. and Ann Garrison Paschall, Asst. Atty. Gen., Tampa, for appellee.
EHRLICH, Justice.
This case is before us for review of a conviction for which the death sentence was imposed. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We reverse the conviction and sentence.
The evidence adduced at trial supports the conclusion that Smith and a friend, Derrick Johnson, planned a robbery the night of March 20, 1983. Carrying out that plan, Smith called a taxi to a St. Petersburg restaurant at 12:28 a.m. The two told the driver to take them to a residential area a few miles away. The driver, becoming suspicious, radioed a coded emergency message to his dispatcher. A short time later, another cab driver and the police found the cab, the driver outside the car, dead from a shot in the back. A witness who saw the killing testified that he recognized Smith and Johnson, and that Smith had taken aim and fired at the driver as the driver tried to run from the scene.
The murder weapon was never found. However, several witnesses linked Smith to a .38 caliber pistol. Smith's uncle testified that a .38 caliber gun was missing from his home. A lead fragment found on the victim matched the lead composition of the bullets purchased with the uncle's gun. Other witnesses saw Smith with a gun during the day before the shooting, and Johnson's testimony also put the gun in Smith's possession.
One witness testified that Smith robbed him and his wife in their motel room about twelve hours after the murder. Smith used a gun resembling the one used in the murder, although it was never established that the gun was the same since no gun was ever found. Police found Smith's fingerprint on a suitcase in the motel room, and after his arrest, recovered a watch taken in the motel robbery.
Some time after the robbery, Smith was arrested on an unrelated charge and incarcerated at the Hillsborough County Jail. St. Petersburg police located him at the jail, and arrested him for first-degree murder. He was later also charged with the motel-room robbery. A grand jury indicted Smith for first-degree murder. Before the murder trial, Smith pleaded guilty to the motel armed robbery charge. At trial, the jury found Smith guilty of first-degree murder and recommended death, 7-5. The trial judge followed the jury's recommendation and sentenced Smith to death.
Smith did not testify during the guilty phase. However, in a statement made to police during the investigation, Smith admitted he had been trying to sell a gun the day before the murder, and that he had been with Johnson at the restaurant. Smith said he sold the gun to Johnson for $50 between the time the cab was called and its arrival, and that he started to get into the cab but changed his mind at the last minute and walked away.
During the penalty phase, Smith and three character witnesses testified on his behalf. The trial judge found two aggravating circumstances: prior conviction for *1065 a violent felony based on Smith's guilty plea to the motel room robbery; and the murder occurred during an attempted armed robbery. The judge found these to outweigh the mitigating circumstance of no significant history of prior criminal activity. The judge did not find Smith's age at the time of the offense, twenty, to be a mitigating factor.
Initially, we note that the state elicited an improper comment on Smith's exercise of his right to remain silent. The damning testimony came as the state examined Detective San Marco, the arresting officer who interviewed Smith upon his arrest. The state was introducing a form Smith signed waiving his Miranda rights. The comment on silence came during the testimony regarding the final question on the form:
Q. (Assistant State Attorney McKeown) Next question, having these rights in mind, do you wish to talk to us now. Did you ask him that question?
A. (San Marco) Yes, ma'am, I did.
Q. And what was his initial response to that question?
A. No.
Q. All right. Did you at that time write that response in on this form?
A. Yes, ma'am, I did.
Q. What occurred at that time?
A. I said to him, I says, what's the problem. I said when you first came in here 
At this point, defense counsel interrupted to object and moved for mistrial for the comment on Smith's exercise of his right to remain silent. The judge denied the motion and the examination continued.
Q. (By Ms. McKeown) Officer, what happened at that point in time?
A. I said to him, I says, what's the problem? When we talked in here, you indicated you were willing to talk with us. He says, I'm in a lot of trouble, and I want to talk to a lawyer. And I said, well, fine, that's up to you. I'm only here to get your side of the story established. And with that he changed his mind right away, and he said yes. So I said to him, I've already written no on that form. I'm going to put a dash right and yes, and put changed mind. And he agreed to that.
Clearly, the recounting of Smith's "no" is a reference to the defendant's exercise of his right to remain silent. The error is compounded by the further testimony that, upon further prodding by San Marco, Smith asked for an attorney, testimony to such request again being a comment on the exercise of the right to remain silent.
state argues that the defendant lost his right to object when he failed to object to the same testimony during examination of the detective outside the jury's presence immediately before the testimony at issue here. However, the prefatory inquiry related to the admissibility of Smith's subsequent statements to police. In that context, the testimony regarding the circumstances of Smith's waiver was relevant for the judicial determination of voluntariness. There were no grounds for objection, considering the limited nature and purpose of the proffer. The fact that defense counsel did not, by a motion in limine or "objection," "remind" the state of its fundamental obligation to refrain from eliciting comments on the exercise of the right to silence cannot work against the defendant. The obligation is upon the state to exercise proper restraint and the defense should not be penalized for presuming the state will act within the bounds of propriety.
The state further argues that Smith's "no" was not an exercise of his right to remain silent since he waived the right. However, the right was exercised, and the subsequent impermissible communications by the police vitiate any claim that the waiver was voluntary. Nothing could be clearer than "no." As we explain in our discussion of the next issue, at that point Smith erected a constitutional barrier which exists for his protection. "The reason for the rule holding inadmissible at trial evidence of the post-arrest silence and request for counsel of a defendant who has been advised of his Miranda rights is that *1066 the evidence creates an inference that the defendant is guilty of committing the criminal act." State v. Burwick, 442 So.2d 944, 947 (Fla. 1983), cert. denied, 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984).
The price society must pay for violation of this constitutional right is reversal. State v. Strasser, 445 So.2d 322 (Fla. 1983); State v. Burwick; Bennett v. State, 316 So.2d 41 (Fla. 1975). However, we recently adopted a harmless error rule for cases such as this. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Rather than request supplemental briefs on this issue, we refrain from deciding whether the error here was harmless and base reversal on a second, independent error.
The second error is the admission of the statement Smith made to Detective San Marco after Smith exercised his right to remain silent. The United States Supreme Court recognizes that a clear line is drawn when a suspect requests counsel. In Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), a suspect was subjected to a colloquy with detectives strikingly similar in nature to the one Smith engaged in here. 469 U.S. at 92-93, 105 S.Ct. at 491-92. In responding to the Miranda warnings, the accused in the Illinois case asked for an attorney. Instead of immediately terminating communication relating to the criminal matter, police continued with the Miranda procedure, which culminated in police asking the accused if he wished to waive his Miranda rights and talk at that time. The accused, who had initially asked for counsel, then equivocated. Police added an ambiguous statement that could be interpreted to mean the accused had to talk, but could stop at any time. The Illinois Supreme Court held that, because of the suspect's subsequent equivocation about his request for counsel, he had never made an "effective" request for counsel. The United States Supreme Court rejected use of subsequent equivocal statements to ameliorate the effect of the initial request for counsel. Although the issue turned upon the nature of the suspect's request for counsel, it is clear from the opinion that, at the precise point when a clear and unequivocal request for counsel is made, an accused "`is not subject to further interrogation by the authorities until counsel has been made available to him,' unless he waives his earlier request for assistance of counsel." 469 U.S. at 94-95, 105 S.Ct. at 492, quoting Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1881, 68 L.Ed.2d 378 (1981). Thus, in a case such as this, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), controls:
Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point, he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present.

384 U.S. at 473-74, 86 S.Ct. 1603 (emphasis added).
In the instant case, when Smith answered "no" to the question of whether he wished to speak at that time, the interrogator's constitutionally proper options became severely limited. Police are not free to inquire as to why an accused has exercised his right to remain silent. Once the request for an attorney is made, "the individual must have an opportunity to confer with the attorney and to have him present during any further questioning. If the individual cannot obtain an attorney and he indicates he wants one before speaking to police, they must respect his decision to remain silent." 384 U.S. at 474, 86 S.Ct. 1604. The gratuitous remarks of police *1067 after the request for counsel, in both Smith v. Illinois and the instant case, are impermissible questioning. Thus, Smith's statement in this case that "I'm in a lot of trouble, and I want to talk to a lawyer" is inadmissible both because it came as a result of an improper question following exercise of the right to remain silent, and because it is in itself a statement exercising the right to remain silent and would constitute an impermissible comment on the exercise of that right. Smith's "alibi," given after an impermissible comment made after the request for counsel, is inadmissible because Smith had not voluntarily waived his Miranda rights.
Finally, should the case on remand reach the penalty stage in a retrial, we note that the trial judge was most conservative in instructing on mitigating circumstances. Smith was denied instructions on age, emotional disturbance, impaired capacity, and minor participation. Section 921.141(6), Fla. Stat. (1983), subsections (g), (b), (f), and (d), respectively.
Particularly, we find that it was error to refuse to give the requested instruction on age when the accused was twenty years of age at the time of the crime. While it is ultimately within the province of the trial court to decide the weight to be accorded age as a mitigating circumstance, Jennings v. State, 453 So.2d 1109 (Fla. 1984), and it is not necessarily error to accord little or no weight to an age of twenty, id., we have on numerous occasions left undisturbed a trial court's determination that an age of twenty, and even older, is a mitigating circumstance. See, e.g., Thomas v. State, 456 So.2d 454 (Fla. 1984) (twenty years old); Oats v. State, 446 So.2d 90 (Fla. 1984) (twenty-two years old). Even though the trial judge in this case found Smith's age and other factors did not outweigh the aggravating circumstances, Smith should have had the benefit of the standard instruction on age as a mitigating circumstance. We do not establish a maximum age below which the instruction must always be given. See Peek v. State, 395 So.2d 492, 494 (Fla. 1980) ("There is no per se rule which pinpoints a particular age as an automatic factor in mitigating."), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). We do conclude that in this case it should have been.
There was also some evidence, however slight, that Smith had smoked marijuana the night of the murder sufficient to justify giving instructions for reduced capacity and extreme emotional disturbance. On the other hand, there was no evidence that Smith was a minor participant in the murder. Smith urges that his alibi defense, that he was never at the murder scene, is sufficient to justify this instruction. However, the jury had to have rejected the alibi when it determined guilt, and no other evidence suggested Smith was a minor participant. All the evidence placed the gun in Smith's hand; no evidence suggested Johnson was the triggerman and that Smith was only an accomplice of minor culpability.
Accordingly, the conviction and sentence of Derrick Tyrone Smith are reversed and the case remanded.
It is so ordered.
ADKINS, BOYD, OVERTON and BARKETT, JJ., concur.
McDONALD, C.J., concurs in part and dissents in part.
SHAW, J., dissents with an opinion, in which McDONALD, C.J., concurs on second issue.
SHAW, Justice, dissenting.
I disagree with the majority for several reasons. First, concerning the "comment on silence," the transcript shows that defense counsel objected to the statement "I am in a whole lot of trouble, and I would like to talk with a lawyer," when it was proffered outside the presence of the jury. However, the ground for the objection[1] *1068 was not that it was a comment on silence, but that it might result in placing before the jury information on appellant's unrelated criminal activity in neighboring Hillsborough County. The prosecution agreed this would be improper and the trial court cautioned the prosecutor "to avoid statements about the Hillsborough situation." At this point, without objection, the jury was brought in and Detective San Marco testified, as he had at proffer, concerning appellant's initial declination to talk without a lawyer present, followed by his immediate change of mind and agreement to talk. Defense counsel then objected and moved for mistrial on the ground that the testimony was a comment on silence. I agree with appellee that appellant is precluded from raising this issue on appeal. It is settled law, excepting fundamental error which denies defendant a fair trial, that an objection must be contemporaneous[2] and that an appellate court "cannot consider any objections to the admissibility of evidence, except such objections as were made in the court below; the [appellant] ... being confined to the specific objections made in the trial court." Tampa Electric Co. v. Charles, 69 Fla. 27, 67 So. 572, 573 (1915). These rules are particularly applicable where, as here, an appellant attempts to benefit from an error which he himself invited.[3] I cannot agree with the majority's conclusion that counsel is not obligated to object at proffer to all evidence deemed inadmissible; counsel should not be permitted to sandbag the opposing party and the court by withholding objections until the jury is present. To do so is to defeat the purpose of a proffer. Assuming there is error, I agree with the majority that it should be analyzed using harmless error principles and that the error was harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). When harmless error principles are applied, I am persuaded that the error, assuming there was error, was harmless. See analysis below.
The majority bases its reversal on the admission of appellant's statement which it finds violates Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). In Smith, the Court found that two distinct inquiries are involved when an accused in custody expresses a desire to deal with the police only through counsel. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). These inquiries are: (1) whether the accused actually invoked a right to counsel and (2) having invoked a right to counsel, did the accused knowingly and intelligently waive the right he had invoked by initiating further discussions with the police. In Smith, the pertinent inquiry was the first. The Court found that the accused had unequivocally invoked the right to counsel and the statement obtained thereafter was thus inadmissible. The Court reversed the judgment of the Illinois Supreme Court which held that the statement was admissible and remanded the case for further proceedings not inconsistent with its opinion. This disposition did not bar application of the harmless error rule by the Illinois Court.
Smith is factually inapposite to the case here. There is no question that appellant invoked at one point his right to remain silent and to have counsel present. The question is whether he immediately thereafter knowingly and intelligently waived the right he had just invoked. The question is a close one but, assuming arguendo that he did not waive the right and the *1069 statement he gave is inadmissible as the majority holds, we are still obligated to perform a harmless error analysis to determine if admission of the statement was harmful. The majority apparently assumes that Smith stands for the proposition that admission of a statement in violation of the prophylactic rules of Edwards and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is per se reversible error. This assumption misperceives the nature and purpose of Miranda's prophylactic standards[4] and is contrary to controlling federal case law and Florida statute.[5] We know from United States v. Hasting, 461 U.S. 499, 509, 103 S.Ct. 1974, 1975, 76 L.Ed.2d 96 (1983), that "it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations." Id. We also know from Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 825, 17 L.Ed.2d 705 (1967), that the only violations of constitutional rights that are per se reversible are those "so basic to a fair trial that their infraction can never be treated as harmless error." Id. None of the three basic errors cited by the Chapman court as per se reversible are present here: coerced confession, right to counsel and impartial judge. Id. 386 U.S. at 24 n. 8, 87 S.Ct. at 828 n. 8. The majority is misapplying Smith, Edwards, Hasting, and Chapman in holding that the error, if any, is per se reversible, not subject to harmless error analysis.
Turning to the harmless error analysis, I note first that the evidence against appellant was overwhelming. An accomplice testified that the two men went from establishment to establishment during the course of the evening. Other witnesses corroborated the accomplice's testimony. The accomplice testified that he and appellant agreed to commit a robbery in order to obtain money, and, after discussing several possibilities, agreed to rob a taxicab. There was testimony from numerous witnesses that appellant either had a handgun or had access to one. There was testimony from two robbery victims that appellant robbed them approximately twelve hours after the murder using a handgun. (Appellant pleaded guilty to this offense.) The accomplice testified that appellant called a taxicab from a restaurant; appellant's fingerprints were found on the phone. Other witnesses saw the two men enter the taxicab. The accomplice testified that the appellant shot the victim taxicab driver as he attempted to flee on foot. A bystander who knew both appellant and the accomplice by sight testified that he saw the murder and that appellant shot the fleeing taxicab driver as the accomplice had testified.
Having examined the evidence of guilt, absent the inadmissible evidence, we must examine the impermissibly admitted evidence to determine "`whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction'... [and whether we can] declare a belief that it was harmless beyond a reasonable doubt." Chapman, 386 U.S. at 24, 87 S.Ct. 828. Turning to the testimony of Detective San Marco concerning the statement that appellant made to him, the most salient feature of the statement is that it does not constitute an admission of guilt. On the contrary, the statement is a complete denial of the *1070 charges and a profession of innocence. A fair summary of appellant's statement to Detective San Marco is:
(1) Appellant and accomplice were together that evening at various named establishments and agreed to rob a taxicab.
(2) Appellant used a phone to call a girlfriend; he did not call nor talk to the cab company. The accomplice used the phone twice to summon a taxicab.
(3) Appellant had a gun that evening which he had obtained earlier that day from a youngster. He thought the gun was a .32 caliber. He sold the gun to the accomplice that evening for fifty dollars.
(4) When the cab arrived, the accomplice got in the front seat; appellant started to get in the back seat, changed his mind, closed the door and left. He was not in the taxicab when it left.
In short, the complained-of evidence is exculpatory.[6] It is clear under the Chapman test that there is no reasonable possibility that the jury was influenced by appellant's profession of innocence and his admission on non-critical points when it found him guilty of first-degree murder. Admission of the complained of evidence and the comment on silence was harmless in this case.
I would affirm the conviction.
McDONALD, C.J., concurs on second issue.
NOTES
[1] Counsel's stated reasons for objection were:

Your Honor, I want to prevent the possibility of a mistrial taking place here. It's my understanding that they would be eliciting a statement from Smith with regard to his being in a lot of trouble, and I don't think it's going to come out clear as to specifically what was meant by that statement. And I'm concerned about it because I think that if it might possibly relate to something other than the charges that we are involved in here, then we have a situation where I think the jury could become very prejudiced against Derrick Smith, and I want to bring that to the Court's attention at this point.
[2] Ray v. State, 403 So.2d 956 (Fla. 1981); Castor v. State, 365 So.2d 701 (Fla. 1978); Clark v. State, 363 So.2d 331 (Fla. 1978).
[3] Ray v. State; McCrae v. State, 395 So.2d 1145 (Fla. 1980), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981).
[4] The Miranda standards are a bright line intended to prove or disprove whether there was an intelligent and knowing waiver of the right to remain silent or to have counsel present at interrogations. Violation of Miranda does not in itself violate the fifth amendment, as Miranda recognizes. This is so because the judicially created Miranda standards sweep wider than the fifth amendment right not to be compelled to be a witness against oneself. Thus, a statement may be voluntary and admissible under constitutional standards, but inadmissible under Miranda bright lines. In sum, violation of Miranda is not in itself a violation of a constitutional right. See, generally, Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); New York v. Quarles, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984); Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] § 924.33, Fla. Stat. (1981).
[6] Why the prosecution went to such pains to introduce unnecessary and exculpatory evidence is a mystery, particularly since the admissibility of the evidence was questionable and might well lead to a reversal, as it has, of a verdict for which there is overwhelming evidence.