502 So.2d 415 (1986)
Wayne TOMPKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 67974.
Supreme Court of Florida.
December 30, 1986.
Rehearing Denied March 9, 1987.
*417 James Marion Moorman, Public Defender, Tenth Judicial Circuit, and Robert F. Moeller, Asst. Public Defender, Bartow, for appellant.
Jim Smith, Atty. Gen., and James A. Young, Asst. Atty. Gen., Tampa, for appellee.
BARKETT, Justice.
Wayne Tompkins appeals his conviction for first-degree murder and the sentence of death imposed by the trial judge in accordance with the jury's recommendation. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm both the conviction and sentence.
The victim, Lisa DeCarr, aged 15, disappeared from her home in Tampa on March 24, 1983. In June 1984, the victim's skeletal remains were found in a shallow grave under the house along with her pink bathrobe and jewelry. Based upon a ligature (apparently the sash of her bathrobe) that was found tied tightly around her neck bones, the medical examiner determined that Lisa had been strangled to death. In September 1984, Wayne Tompkins, the victim's mother's boyfriend, was charged with the murder.
At trial, the state's three key witnesses testified as follows. Barbara DeCarr, the victim's mother, testified that she left the house on the morning of March 24, 1983, at approximately 9 a.m., leaving Lisa alone in the house. Lisa was dressed in her pink bathrobe. Barbara met Wayne Tompkins at his mother's house a few blocks away. Some time that morning, she sent Tompkins back to her house to get some newspapers for packing. When Tompkins returned, he told Barbara that Lisa was watching television in her robe. Tompkins then left his mother's house again, and Barbara did not see or speak to him again until approximately 3 o'clock that afternoon. *418 At that time, Tompkins told Barbara that Lisa had run away. He said the last time he saw Lisa, she was going to the store and was wearing jeans and a blouse. Barbara returned to the Osborne Street house where she found Lisa's pocketbook and robe missing but not the clothes described by Tompkins. Barbara then called the police.
The state's next witness, Kathy Stevens, a close friend of the victim, testified that she had gone to Lisa DeCarr's house at approximately 9 a.m. on the morning of March 24, 1983. After hearing a loud crash, Stevens opened the front door and saw Lisa on the couch struggling and hitting Tompkins who was on top of her attempting to remove her clothing. Lisa asked her to call the police. At that point, Stevens left the house but did not call the police. When Stevens returned later to retrieve her purse, Tompkins answered the door and told her that Lisa had left with her mother. Stevens also testified that Tompkins had made sexual advances towards Lisa on two prior occasions.
Kenneth Turco, the final key state's witness, testified that Tompkins confided details of the murder to him while they were cellmates in June 1985. Turco testified that Tompkins told him that Lisa was on the sofa when he returned to the house to get some newspapers for packing. When Tompkins tried to force himself on her, Lisa kicked him in the groin. Tompkins then strangled her and buried her under the house along with her pocketbook and some clothing (jeans and a top) to make it appear as if she had run away.
After the state rested its case, the trial court denied Tompkins' motion for acquittal, finding that the evidence was sufficient to prove premeditation and that the state had established a prima facie case. The defense rested after the close of the state's case without presenting any additional evidence. The jury found Tompkins guilty as charged.
At the penalty phase, the state presented evidence from three witnesses to show that Tompkins had been convicted of kidnapping and rape stemming from two separate incidents in Pasco County which occurred after Lisa DeCarr's disappearance. The defense presented testimony from three witnesses regarding Tompkins' good work record, shy and nonviolent personality, and honesty.
The trial judge, finding three aggravating circumstances (previous conviction of felonies involving the use or threat of violence to the person;[1] murder committed while the defendant was engaged in an attempt to commit sexual battery;[2] murder was especially heinous, atrocious, or cruel)[3] and one statutory mitigating circumstance (defendant's age at the time of the crime),[4] followed the jury's recommendation and sentenced Tompkins to death.
Appellant challenges his conviction on four grounds. First, appellant argues that the admission of his confession through Turco's testimony was error because the state had not proven the corpus delicti of the crime by independent evidence.[5]State v. Allen, 335 So.2d 823 (Fla. 1976). We find no merit in this contention. We first note that appellant never objected to the introduction of the confession at trial. However, assuming arguendo that appellant's motion for judgment of acquittal at the close of the state's case preserved the issue, we find no trial court error. The medical examiner's testimony that, within a reasonable degree of medical certainty, death was caused by strangulation, coupled with the location of the victim's *419 remains in a grave underneath the victim's residence, is more than sufficient to meet the "substantial evidence" standard required under Allen. See id at 824.
Appellant next argues that the trial court violated his sixth amendment right to confront witnesses by limiting his cross-examination of state's witnesses Barbara DeCarr and Detective K.E. Burke. Appellant contends that curtailment of his right to cross-examine these witnesses prevented him from establishing his defense, i.e., that Lisa DeCarr did in fact run away and met her death sometime after March 24, 1983. We find no violation of appellant's sixth amendment rights. Although wide latitude is permitted on cross-examination in a criminal trial, its scope and limitation lies within the sound discretion of the trial court and is not subject to review except for a clear abuse of discretion. Sireci v. State, 399 So.2d 964, 969-70 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). The trial court found that each of the questions to which the state objected was irrelevant or called for hearsay testimony. After careful review of the record, we find no abuse of discretion.
In his third point, appellant argues that the trial court erred in permitting the state to elicit certain testimony from Barbara DeCarr on redirect examination. The record reveals that on cross-examination of DeCarr, defense counsel asked DeCarr to confirm that Lisa had never complained to her mother about Tompkins making any type of sexual advances. DeCarr replied, "She never." On redirect, the prosecutor asked whether Lisa had voiced any complaint to DeCarr about Tompkins in February 1983. Finding that defense counsel had opened the door to this line of questioning, the trial court permitted DeCarr to testify that Lisa had begged her not to go back with Tompkins. Appellant contends that the defense did not open the door because his question on cross-examination was limited to complaints about sexual advances. We cannot agree. Generally, testimony is admissible on redirect which tends to qualify, explain, or limit cross-examination testimony. Tampa Electric Co. v. Charles, 69 Fla. 27, 67 So. 572 (1915); Hinton v. State, 347 So.2d 1079, 1080 (Fla. 3d DCA), cert. denied, 354 So.2d 981 (Fla. 1977). Moreover, defense counsel's question on cross-examination could have led the jury to infer that Lisa had never complained to her mother about Tompkins. We find that the state was properly allowed to pursue this line of questioning to rebut such an inference. Cf. McCrae v. State, 395 So.2d 1145, 1151-52 (Fla. 1980) (state properly entitled to transcend normal bounds of cross-examination in order to negate delusive innuendos of defense counsel), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981).
Appellant next argues that death-qualified juries are unconstitutional. This argument has been rejected by this Court, Kennedy v. Wainwright, 483 So.2d 424 (Fla.), cert. denied, ___ U.S. ___, 107 S.Ct. 291, 93 L.Ed.2d 265 (1986), and by the United States Supreme Court in Lockhart v. McCree, ___ U.S. ___, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).
We turn now to appellant's six claims of error in the penalty phase of the proceeding. First, appellant argues that the trial court erred in allowing two police officers to testify as to details of previous crimes he had committed. Appellant acknowledges that details of prior felonies involving the use or threat of violence to the person are properly admitted in the penalty phase of a capital trial and that hearsay testimony is admissible provided the defendant has a fair opportunity to rebut it. § 921.141(1), Fla. Stat. (1985); Perri v. State, 441 So.2d 606, 608 (Fla. 1983). He contends, however, that he had no opportunity to rebut or confront the officers' testimony in this case, and that his death sentence must therefore be reversed. We disagree.
We note, first of all, that appellant did not argue at trial, as he does here, that he was denied the opportunity to confront witnesses testifying against him. *420 The record shows that Detective Gell identified Tompkins as the person he had arrested for a kidnapping and rape in Pasco County. When defense counsel objected to "any hearsay testimony" regarding the prior offenses, the trial court sustained the objection, in part, and limited the officer to saying that the victim of that crime was a white female convenience store clerk and that she had identified Tompkins in a lineup. The trial court stated that it would permit the lineup testimony because the officer was present at the lineup. The trial court similarly limited the other officer's testimony to the statement that Tompkins had pleaded guilty to another kidnapping and rape of a convenience store clerk.
Although appellant did not argue a constitutional error at trial, we recognize that the admission of hearsay in criminal proceedings may constitute a violation of the accused's sixth amendment right to confront witnesses testifying against him. See Engle v. State, 438 So.2d 803 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 753 (1984). We also recognize that the right of confrontation protected by cross-examination is a right that has been applied to the sentencing process. Engle, 438 So.2d at 813 (citing Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967)). However, even if we assume that the victims of the prior offenses were unavailable for appellant to confront, the officers' testimony was clearly harmless under the facts of this case. The state introduced certified copies of appellant's prior convictions, establishing two separate instances of kidnapping and sexual battery. The certified copies disclosed that appellant had pleaded guilty to the kidnap and rape charges in one case and had entered a plea of no contest to the charges filed in the other incident. This evidence alone is sufficient to establish the aggravating circumstance under section 921.141(5)(b), Florida Statutes (1985) (prior convictions for felonies involving use or threat of violence to the person). We find no prejudice to Tompkins resulting from the officers' testimony.
Appellant next asserts that the trial court's finding of an aggravating circumstance under section 921.141(5)(b) was improperly based on hearsay evidence, and that the trial judge gave this aggravating circumstance undue weight. We have already found that the certified copies of judgment and sentence established this aggravating circumstance beyond a reasonable doubt. We also find meritless appellant's claim of error as to the weight given this aggravating circumstance. Once the trial court has found which, if any, aggravating circumstances apply, it must then decide the weight to be given particular mitigating circumstances, if any, and whether they offset the established aggravating circumstances. Herring v. State, 446 So.2d 1049, 1057 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984). The trial court properly found this aggravating circumstance and we find no indication that this factor was improperly doubled or otherwise given undue weight.
In his third point, appellant contends that the trial court erroneously found the aggravating circumstance that this murder was committed during an attempted rape. Appellant argues that the trial court's use of the word "rape" rather than "sexual battery" invalidates its finding of this aggravating circumstance. This argument is meritless. Adams v. State, 412 So.2d 850, 856 (Fla.) (act itself, rather than its nomenclature, constitutes the aggravating circumstance), cert. denied, 459 U.S. 382, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982). Appellant also contends that if we discount his confession to Turco the evidence is insufficient to establish an attempted sexual battery. Having already concluded that the confession was properly admitted, this argument must be rejected. Moreover, appellant's confession that the victim was strangled after she refused his sexual advances is consistent with the testimony of Kathy Stevens that appellant was attempting to remove the victim's clothes as she struggled to fight him off. We find the evidence sufficient to establish this aggravating circumstance.
*421 Appellant's next point is that the trial court incorrectly found that the murder was especially heinous, atrocious, or cruel. We have already determined that there was sufficient evidence upon which to conclude that the victim's death was caused by strangulation. We have previously held that it is permissible to infer that strangulation, when perpetrated upon a conscious victim, involves foreknowledge of death, extreme anxiety and fear, and that this method of killing is one to which the factor of heinousness is applicable. Johnson v. State, 465 So.2d 499, 507 (Fla.), cert. denied, ___ U.S. ___, 106 S.Ct. 186, 88 L.Ed.2d 155 (1985); Adams, 412 So.2d at 857; Alvord v. State, 322 So.2d 533, 541 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976). The medical examiner testified that death by strangulation is not instantaneous. Furthermore, there is sufficient competent evidence in the record to support a finding that the victim was not only conscious but struggling and fighting to get away when appellant strangled her. Death under these circumstances is heinous, atrocious, and cruel. See Adams, 412 So.2d at 857; Smith v. State, 407 So.2d 894, 903 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982). The trial court did not err in finding this aggravating circumstance.
Appellant next contends that the trial court did not give adequate consideration to the evidence of nonstatutory mitigating circumstances. With respect to nonstatutory mitigating circumstances, the trial court stated that it found "NONE, notwithstanding testimony to the effect that the defendant was a good family member and good employee." We conclude that the judge did consider the evidence but found that it did not rise to a sufficient level to be weighed as a mitigating circumstance. See Woods v. State, 490 So.2d 24 (Fla. 1986).
Appellant's final claim of error is that the trial judge did not make a reasoned independent judgment of whether or not the death penalty should be imposed. Appellant bases this argument on the trial judge's written order stating that the jury's death recommendation is "entitled to great weight." We reject this claim. The trial court expressly stated: "After considering only the evidence before the jury, the court finds that the aforesaid statutory aggravating circumstances clearly outweigh the statutory mitigating circumstance." There is nothing in the court's order or elsewhere in the record to suggest that the trial court imposed the death penalty because it felt compelled to do so by the jury's recommendation. Cf. Ross v. State, 386 So.2d 1191 (Fla. 1980) (remand for resentencing required where trial court expressly stated it found no compelling reason to override jury's recommendation).
Finding no reversible error in either the guilt or penalty phases of appellant's trial, we affirm both the conviction and sentence imposed.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.
NOTES
[1] § 921.141(5)(b), Fla. Stat. (1985).
[2] § 921.141(5)(d), Fla. Stat. (1985).
[3] § 921.141(5)(h), Fla. Stat. (1985).
[4] § 921.141(6)(g), Fla. Stat. (1985).
[5] Appellant notes that Tompkins' confession may have been obtained by Turco acting as a state agent, in violation of the privilege against self-incrimination or right to counsel under United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), but concedes that this issue was not preserved for review on direct appeal.