BASKIN, Judge
(dissenting).
Quinones had a federal conviction for receiving a gun while under information during the period he was awaiting trial in the case before us. At trial, he admitted the prior conviction:
*48 Q Have you ever been convicted of a crime and if so, how many times?
A I was convicted of a crime only once.
Q And what was that crime?
A The fact of buying a pistol for my defense and the defense of my family.
Q Did you buy that weapon while you were under Information in this case and when you were charged with this case?
A Yes, sir.
Q An that’s the crime you were convicted of. Is that correct?
A. Yes, sir.
On cross-examination, the prosecutor suggested a different crime — falsifying a federal application — for which no conviction, or even charge, existed. The prosecutor’s questions did not relate to anything Quinones had stated about using the gun for family protection. Contrary to the majority’s assertion, the prosecutor’s questions did not pertain to any relevant testimony about the only conviction, that is, possessing a gun while under information. The prosecutor sought to introduce the uncharged crime. He asked:
Q Now, this crime which you have been convicted of, the reason you were charged and convicted of it, this crime, is when you went to purchase a gun, you had to fill out a form and swear that you were not under Information or Indictment at the time.
Isn’t that true, sir?
A It’s true, sir.
That question exceeded permissible eviden-tiary limits on questions that may be asked individuals who have admitted their prior convictions.
In McCrae v. State, 395 So.2d 1145, 1152 (Fla.1980), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981), the supreme court explained the circumstances which would permit the state to interrogate a defendant regarding the nature of a prior felony. McCrae’s defense counsel attempted to mislead the jury into believing that defendant’s prior conviction of assault with intent to commit murder was equivalent to defendant’s previous misdemeanors,[1] and defense questioning could have deluded the jury about prior convictions. The state was therefore entitled to question “the nature of the felony in order to negate the delusive innuendoes of his counsel.” McCrae, 395 So.2d at 1152. Here, however, Quinones’ explanation, that he bought the gun in order to protect his family, did not attempt to delude the jury or conceal the conviction. Thus, Quinones did not “open the door” to in-depth questioning about the nature of the conviction and certainly did not invite questions about a collateral fact such as how he prepared the gun application.
The test for determining whether a matter is collateral and non-material so that evidence is immaterial to contradict the answer of the witness is whether the impeaching evidence would be admissible for any purpose other than the contra-diction_ [TJhere are two kinds of evi *49 dence that pass the test: (1) evidence which is relevant to independently prove a material fact or issue; (2) evidence which would discredit a witness by pointing out the bias, corruption or lack of competency of the witness.
C. Ehrhardt, Florida Evidence § 608.1 (2d ed. 1984); see Gelabert v. State, 407 So.2d 1007, 1010 (Fla. 5th DCA 1981). Applying that test, I conclude that statements on the gun application form are irrelevant to a conviction for possession of a firearm while under information and have no bearing on the issues of this case.
The majority opinion gains no support from section 90.610(1), Florida Statutes (1985), which provides:
A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, or if the crime involved dishonesty or a false statement regardless of the punish-ment_ (Emphasis supplied.)
Similarly, section 90.608(1)(a), Florida Statutes (1985),[2] provides no justification for the introduction of collateral matters. Sneed v. State, 397 So.2d 931, 933 (Fla. 5th DCA 1981). Quinones’ prior conviction was not for dishonesty or a false statement, and his false statement on the application did not result in a conviction. Thus, the trial court erred when it permitted the prosecutor to cross-examine Quinones regarding prejudicial matters collateral to his federal conviction. For these reasons, I would reverse.

. On direct examination, McCrae’s counsel asked his client:
Doug, at this time I would like to ask you a few questions. I would like to begin by asking you: Have you ever been convicted of a misdemeanor?
A. Yes, I have.
Q. Do you recall how many times you have been convicted of a misdemeanor?
A. Well, I would say over the past nine or ten years possibly about nine or ten misdemeanors.
Q. Did you pay fines or did you serve time for these misdeameanors?
A. I paid fines.
Q. Do you recall how much in the way of fines you may have paid for misdemeanors total?
A. Yes. I paid a total of $445 in fines.
Q. Doug, have you ever been convicted of a felony?
A. Yes, I have, one.
Q. One time?
A. Right.
Q. Doug, these misdemeanors, this felony you told me about, were you found guilty by a judge or a jury?
A. No, I was not; I pled guilty.
Q. You pled guilty?
A. Yes.
Q. Why did you plead guilty?
A. Because I was guilty.
Q. How did you plead to this charge against you that you are here for today?
A. No guilty.
Q. Why did you plead not guilty, Doug?
A. Because I am not guilty.
McCrae v. State, 395 So.2d at 1151-52.

. Section 90.608(1) (a), Fla.Stat. (1985), provides in pertinent part:
(1) Any party, except the party calling the witness, may attack the credibility of a witness by:
(a) Introducing statements of the witness which are inconsistent with his present testimony.