582 So.2d 613 (1991)
James Curtis McCRAE, Appellant,
v.
STATE of Florida, Appellee.
No. 74685.
Supreme Court of Florida.
May 30, 1991.
Rehearing Denied August 7, 1991.
*614 Robert H. Dillinger of Dillinger & Swisher, P.A., St. Petersburg, for appellant.
Robert A. Butterworth, Atty. Gen. and Joseph R. Bryant, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
James Curtis McCrae appeals from an order reimposing the death penalty. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution.
McCrae was convicted of the first-degree felony murder of an elderly woman. The pertinent facts of the murder are set forth in our opinion in McCrae v. State, 395 So.2d 1145 (Fla. 1980), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981). McCrae was originally sentenced to death over a jury recommendation of life imprisonment. While McCrae's direct appeal was pending, this Court relinquished jurisdiction to the trial court for an evidentiary hearing on an unrelated post-conviction motion. We later affirmed the conviction and sentence, as well as the denial of the post-conviction motion. 395 So.2d 1145.
McCrae has twice filed petitions for writ of habeas corpus that were denied by this Court. McCrae v. Wainwright, 422 So.2d 824 (Fla. 1982), cert. denied, 461 U.S. 939, 103 S.Ct. 2112, 77 L.Ed.2d 315 (1983); McCrae v. Wainwright, 439 So.2d 868 (Fla. 1983). A second motion for post-conviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850 was summarily denied by the trial court. On appeal, this Court remanded to the trial court for clarification of the reasons for the denial or for further appropriate proceedings. McCrae v. State, 437 So.2d 1388 (Fla. 1983). After an evidentiary hearing, the motion was again denied. On appeal of that denial, we vacated the death sentence because the trial judge did not believe that he was obliged to receive and consider nonstatutory mitigating evidence. McCrae v. State, 510 So.2d 874, 880 (Fla. 1987). However, because the jury at the original proceeding recommended life, the error was found harmless as to the advisory portion of the proceedings. We, therefore, remanded for a new sentencing proceeding without a jury but directed the trial court to consider the original recommendation. 510 So.2d at 881.
A hearing was held in which McCrae presented additional mitigating evidence. The trial court reimposed the death sentence, again overriding the jury recommendation of life. The trial court found three aggravating factors: 1) that the defendant was previously convicted of a violent felony; 2) that the murder was committed while the defendant was engaged in the commission of a sexual battery; and 3) that the murder was especially heinous, atrocious, or cruel. § 921.141(5)(b), (d), (h), Fla. Stat. (1989). The court found no statutory mitigating factors and although it did not reject the nonstatutory mitigating evidence presented, it found that "when weighed against the aggravating factors, it is so speculative, indefinite and woefully inadequate that it is simply insufficient to overcome the aggravating factors." This appeal followed.
McCrae's sole challenge to the reimposition of the death penalty is that the jury override cannot be sustained under the standard set forth by this Court in Tedder v. State, 322 So.2d 908, 910 (Fla. 1975) (to sustain an override of a jury recommendation of life, the facts suggesting a sentence of death must be so clear and convincing that virtually no reasonable person could differ). We agree.
As we recently noted in Buford v. State, 570 So.2d 923, 924 (Fla. 1990), when a trial court overrides a jury recommendation of life imprisonment and imposes the death *615 penalty, the override will not be sustained unless the life recommendation was unreasonable. This Court reviews the record on direct appeal, and if there is a reasonable basis for the recommendation, we vacate the death sentence. However, in a case such as this
the procedure is somewhat different. Because the defendant has already received the benefit of a life recommendation, it would be improper to summon another jury, which could recommend death. It also would be unfair  as well as pointless  to have the judge bound by our previous approval of the override, since new evidence has been presented. The trial judge, therefore, must weigh all the evidence, old and new, and determine if there was a reasonable basis to support the jury's recommendation. If so, the judge must sentence the defendant to life without parole for at least twenty-five years. If, however, "the facts ... [are] so clear and convincing that virtually no reasonable person could differ," Tedder, 322 So.2d at 910, the judge should make the appropriate findings and impose the death penalty, and this Court will review all the evidence to determine if the record still supports the override.
Id. 570 So.2d at 924 (footnote omitted).
After reviewing all the evidence, both "old and new," we find that there was sufficient mitigating evidence to provide a reasonable basis for a life recommendation. There was testimony that McCrae suffers from temporal lobe epilepsy, a brain disorder involving seizures which commonly result in purposeless activity and physical violence. Dr. Machler, a psychiatrist who testified in connection with the 3.850 hearing,[1] testified that after reviewing McCrae's medical history and records he determined that McCrae met all five criteria recognized as indicating that a person is suffering from this disorder. According to his testimony, the seizures that commonly result in violent outbursts may be precipitated by alcohol use and are generally followed by memory loss.
According to Dr. Machler, the onset of the disorder develops most frequently in the late teens and early adult years. This diagnosis is consistent with expert testimony given during the original proceedings, and the results of an electroencephalogram done at the request of court-appointed experts after McCrae's arrest. Dr. Machler testified that, based on the description given him of the events surrounding the murder, in his opinion McCrae was suffering from a temporal lobe seizure at the time of the murder. He further testified that one having a temporal lobe seizure would have an extreme mental or emotional disturbance, would be unable to appreciate the criminality of his or her conduct, and would not be able to conform his or her conduct to the standards of law. There was also evidence that McCrae had no recollection of the killing.
There was testimony at both the original proceedings and resentencing proceedings that as a high school student McCrae was a nonviolent, quiet, well-mannered young man who participated in athletics. McCrae's ex-wife testified during post-conviction proceedings that when they began to date soon after high school, McCrae was a nice, quiet, almost introverted person, who never had violent outbursts. However, after his return from military service and their subsequent marriage, McCrae changed. He began to drink and would have unexplained outbursts of physical violence that he would not remember afterward. According to McCrae's ex-wife, when he refused to seek help for his problems, she left him the year before the murder occurred. She also testified that twelve years later when she visited McCrae on death row she learned he had been diagnosed as having a form of epilepsy and had been put on medication. She described the McCrae she saw in prison as being "James again," the person she knew before they were married. According to Dr. Machler, the description given by McCrae's *616 ex-wife and other witnesses is consistent with the development of temporal lobe seizure disorder and McCrae's current peaceful nature is consistent with the long-term treatment McCrae has received since his imprisonment.
During the resentencing proceedings, there was also testimony from numerous witnesses that while in prison and receiving treatment, McCrae has demonstrated an above-average intelligence and writing ability; has developed and evidenced strong spiritual and religious standards; has contributed to the lives of others; has demonstrated a high potential for rehabilitation and for making a contribution to the community; and has expressed sincere remorse for his actions. These are valid nonstatutory mitigating factors.
On this record, there was a reasonable basis for a life recommendation. Accordingly, we vacate the sentence of death and remand to the trial court for imposition of a life sentence without possibility of parole for twenty-five years.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Testimony presented during the 1985 hearing on McCrae's rule 3.850 motion was incorporated into the record on remand and was considered by the trial court in resentencing.