395 So.2d 1145 (1980)
James Curtis McCrae, Appellant,
v.
STATE of Florida, Appellee.
No. 45894.
Supreme Court of Florida.
October 30, 1980.
On Rehearing April 9, 1981.
*1147 Philip M. Gerson of Freshman, Gerson & Freshman, Miami, for appellant.
Jim Smith, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This is a direct appeal from a conviction of murder in the first degree and a sentence of death rendered in the circuit court for Lee County, Florida. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm the conviction and sentence.
On October 15, 1973, Margaret Mears, a sixty-seven-year-old woman, was found dead in her apartment. Her body, unclothed from the waist down, had been brutally beaten about the head and chest, and her vaginal area was covered with blood. A bloody palm print lifted from her apartment was identified as that of the appellant, James Curtis McCrae. McCrae was subsequently indicted for two counts of murder in the first degree, one count charging a premeditated killing, and the other charging felony murder.
In order to determine his competency to stand trial, appellant was examined by three court-appointed psychiatrists. While all three doctors concluded that appellant's mental disorders created violent and uncontrolled behavior, appellant was found competent to stand trial. Specifically, Dr. Mordecai Haber observed that McCrae suffered from a disorder which contributed to an explosive personality. The doctor concluded that McCrae was mentally competent but too dangerous to be at liberty in society. Dr. Thomas Haagland found that McCrae *1148 was capable of giving aid to his counsel and, when sober, was a well-contained individual who had firm control over his faculties. However, when under the influence of intoxicants, appellant released an underlying epileptic furor which erupted into uncontrolled violent behavior. Dr. Clarence Schlit, who testified during the bifurcated phase of the trial, stated that McCrae was subject to attacks when under emotional stress which prevented him from exercising the restraint which would be present in a normal individual. Although the doctor stated that appellant was not insane, he did determine that McCrae suffered from a chronic schizophrenic illness and that he was unlikely to cooperate with defense counsel.
At trial, the state introduced the testimony of four witnesses for the alleged purpose of showing identity or establishing a common scheme or plan. Edith Veal testified that she lived near the victim. At the purported hour of the crime's commission, she stated that a young black male with a cast on his arm fitting the same general description as appellant, knocked on her door and asked for Wayne Miller. Mrs. Veal stated that no one by that name lived at her residence. The man then asked if her husband was home. While Mrs. Veal was unable to identify appellant at a pretrial lineup, she was able positively to identify him upon being recalled to the witness stand.
Muriel Bergner similarly testified that she lived in close proximity to the victim. According to her testimony, on October 14, 1973, the day before the victim's body was found, a young black male also fitting McCrae's general description approached her while she was walking her dog, to ask directions. The man walked away, but returned, again asking questions. At that point, Mrs. Bergner walked hurriedly to her home and locked the door. She succeeded in fastening the lock just before the man arrived at her doorstep. The state also called Dorothy Hendley who testified that while walking her dog, a man whom she positively identified as appellant approached her and asked questions similar to those asked of Muriel Bergner.
Faith Lederman Gertner and William Smith testified that McCrae came to Mrs. Gertner's apartment on June 8, 1973, searching for Randy Williams. When informed that Williams did not live there, McCrae left but returned shortly thereafter, and asked Mrs. Gertner to accompany him downstairs. She refused, but William Smith agreed to go in her place. Once they walked downstairs, McCrae took a swing at Smith and fled. Later that evening, appellant returned and forced the door open. He drew a gun and shot Smith. He then beat Mrs. Gertner about the face with the gun and choked her before fleeing again.
After the state rested, appellant took the stand in his own behalf. During direct examination, he was asked if he had been convicted of misdemeanors and if he had pleaded guilty to those charges. Appellant responded in the affirmative to both questions. His counsel then asked if he was ever convicted of a felony, to which appellant again answered affirmatively. On cross-examination, the state attorney sought to elicit the nature of the felony charge. Overruling defendant's objection, the court required McCrae to disclose to the jury that he had pleaded guilty to assault with intent to commit murder on the ground that appellant's counsel had "opened the door" to such questioning.
After the close of the evidence, the jury returned a verdict of guilty on the felony-murder count, but recommended a life sentence. As required by section 921.141(3), Florida Statutes (1975), the trial judge made findings of fact wherein he rejected the recommendation of the jury and entered a judgment calling for the death sentence. Specifically, he stated:
As presiding Judge I observed the Defendant when evidence was introduced and especially when the fingerprint expert from the F.B.I. was testifying, the *1149 Defendant [appellant] appeared extremely nervous and upset when this evidence was being received. Throughout the trial, as the story unfolded, the Court was struck with the heinous, atrocious and cruel murder of this elderly woman.
The Court was also aware that a person answering the description of the Defendant tried to gain entrance to the homes of two other elderly women in the same close neighborhood wherein the deceased lived in her apartment at or about the time shortly connected with the death of the deceased.
The Court is also aware that the testimony proved that the Defendant, a few months before the instant case at bar, brutally attacked a female by the name of Faith Lederman [Gertner] after he, the Defendant, had shot and seriously wounded William R. Smith, which as a result of said attack, the Defendant stood before the Court and voluntarily pleaded guilty to the crime of assault with a deadly weapon with intent to commit first degree murder.
The record in Case No. 73-372 CF, Lee County docket, reveals that the Defendant plead guilty to this charge on September 11, 1974, just about one month before the murder of Margaret Mears, the deceased in the case at bar.
The Defendant was permitted to remain at liberty on bail pending the presentence investigation report on Case No. 73-372 CF.
During the time the Defendant was at liberty on bail between September 11, 1973 and October 29, 1973, the murder for which the Defendant was tried and convicted in the instant case was committed.
It is interesting to note that the Defendant's fingerprints taken when he was convicted for the crime laid in Case No. 73-372 CF matched the bloody fingerprints lifted from the residence and premises occupied by the deceased, Margaret Mears, and thus resulted in the indictment and conviction of the Defendant in the case at bar.
The Court before the trial was interested in the mental state of the Defendant, and appointed experts in the field of psychiatry to thoroughly examine the Defendant. The Court held hearings on the question of the mental condition of the Defendant and after hearing the testimony of such experts held that the Defendant was fully able to distinguish the difference between right and wrong and could fully cooperate with his counsel in the preparation and conducting of his defense.
The Defendant did fully cooperate with counsel during the trial and actively advised counsel and was fully aware at all times of the proceedings during the trial.
The Defendant took the witness stand in his own behalf and demonstrated that he, the Defendant, had an excellent memory, but could not explain how his bloody fingerprints and palm prints were found on the wall near the back door of the deceased's apartment or upon books and other items in the residence.
The evidence discloses that the deceased was so brutally and viciously beaten that her blood was splattered upon the walls and ceiling of her residence, and the evidence further discloses that this elderly woman was raped, either just before her death or directly after she was murdered.
The Court sets forth the above facts as they fully appear in the trial record, and the record taken by the Official Court Reporter.
The mitigating circumstances are very minor.
The Defendant, in order to show the jury that at the time of the crime he was "under the influence of extreme mental or emotional disturbance" placed Dr. Clarence Schilt on the stand, however the good doctor could not with any degree of medical certainty say in his opinion the Defendant was so affected. The doctor in his summation stated that the prisoner was either very smart or very sick.

*1150 Therefore, when the Court takes into consideration the aggravating circumstances such as:
1. The Defendant was a self-convicted felon, pleading guilty to assault to murder, and as an incident thereto, from the trial record that the Defendant had beat [sic] and choked the witness Faith Lederman in a brutal assault upon her, just a few weeks prior to the murder of Margaret Mears, and
2. That the Defendant had on the same night of the murder tried to gain entrance to the residences of two other elderly females in the same locality, and
3. That the crime was committed "according to the jury verdict" in the commission of rape, and
4. That the murder was especially heinous, atrocious, brutal and cruel.
The Court feels that these facts greatly outweigh any mitigating circumstance heard by the Court at the trial of the Defendant.
The Court further feels that the testimony of Dr. Clarence Schilt in its entirety is not sufficient to outweigh the aggravating circumstances as set forth above and as they fully appear in the record in this case.
The Court is fully aware of the great responsibility that rests squarely upon the trial Judge in matters of this kind. The Court has struggled with the weighty decision that must be made in this case, and in making the determination to override the decision of the jury that advised the sentence of life imprisonment.
The Court is not chastising or inferring that the jury was lax in their responsibility. However, as it may appear the Court feels that it is the responsibility of the Court to follow the law as written by the wisdom of our various lawmakers; that society must be protected and that an example must be set forth and made apparent so that our citizens may be secure in their homes and that they may be safe from the experiences that Margaret Mears suffered at the hands of the convicted Defendant.
The Court therefore rejects the advisory sentence of the jury in this case and will pass the sentence of death upon the Defendant, JAMES CURTIS McCRAE.
The Court feels that this action upon its part is dictated by the facts and circumstances gleaned from the trial record and that sufficient aggravating circumstances exist as enumerated in Subsection 6 to greatly outweigh any mitigating circumstances as set forth in Subsection 7 of Section 921.141, Florida Statutes.
Tr. vol. VII, 1090-95.
Appellant urges five points for reversal. We restate these points below:
(i) whether the trial court erred in allowing the state to question McCrae about a prior unrelated felony on cross-examination; (ii) whether the trial court erred in admitting the testimony of Edith Veal, Muriel Bergner, Faith Gertner and William Smith; (iii) whether the trial court's imposition of the death penalty denies appellant due process and equal protection of law and violates the mandate of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), because there is no rational distinction between first degree murder and murder in the second degree; (iv) whether the sentencing procedure enunciated in chapter 921, Florida Statutes (1975), is violative of the constitutional mandate of Furman v. Georgia both on its face and as applied to McCrae; and (v) whether the court erred in overruling the life sentence advisory verdict of the jury.
Following oral argument of respective counsel on these issues, appellant filed in this Court a motion for new trial with supporting affidavit pursuant to Florida Rule of Criminal Procedure 3.600, alleging newly discovered evidence. In the sworn affidavit, Otis Walker, a material witness at the trial of appellant, averred essentially that he testified falsely at trial due to coercion *1151 and the promise of a "deal" by state officials. Appellant contended that Walker's assertion established a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 70 L.Ed.2d 215 (1963) and, accordingly, that he was entitled to a new trial. In an order dated November 29, 1978, we pointed out that a motion under rule 3.600 is an inappropriate pleading in an appellate court; such a motion must be addressed to the trial court. Further, because the time limit for filing this motion in the proper tribunal had expired, the only remedy for the alleged Brady violation was a motion in the trial court to vacate judgment and sentence under Florida Rule of Criminal Procedure 3.850. Although appellant's affiant had denied under oath at trial that he was offered a "deal" in exchange for his testimony in that proceeding, this Court nevertheless relinquished jurisdiction to the trial court to enable appellant to file a rule 3.850 motion raising the alleged Brady violation.
Appellant thereafter filed the motion in the trial court and, on December 18, 1978, after hearing the evidence and argument presented by the parties, the trial court entered an order denying the requested relief. The judge found "that the testimony before this Court of OTIS WALKER ... is, in fact, untrue," and concluded that no Brady violation had occurred. Although appellant filed a notice of appeal from that order, he has not informed this Court of the grounds of his attack. Nevertheless, we have reviewed the record of the rule 3.850 proceedings. We are satisfied that the trial judge correctly ruled on the motion and, accordingly, that ruling is affirmed. We now turn to the issues on appeal.
The first point raised by appellant challenges the ruling of the trial court allowing the prosecutor to cross-examine appellant with respect to his prior criminal record. Appellant concedes that the state is entitled to cross-examine him on those issues developed during direct examination. However, he argues that the state exceeded this scope of permissible inquiry when it sought to elicit the nature of the felony to which appellant referred on direct. According to appellant, the defense established only that he had been accused of a felony and that he had admitted his guilt.
We agree that on cross-examination the state must, as a general rule, limit itself to questions no broader in scope than those propounded by the defense. Cortes v. State, 135 Fla. 589, 185 So. 323 (1938); Cook v. State, 46 Fla. 20, 35 So. 665 (1903); 98 C.J.S. Witnesses, §§ 378, 393b, 395, 401(2) (1957). In the instant case, however, the state properly transcended these bounds because defense counsel, through his questions on direct examination, tactfully attempted to mislead the jury into believing that appellant's prior felony was inconsequential. On direct examination, appellant's counsel asked his client:
Doug, at this time I would like to ask you a few questions. I would like to begin by asking you: Have you ever been convicted of a misdemeanor?
A. Yes, I have.
Q. Do you recall how many times you have been convicted of a misdemeanor?
A. Well, I would say over the past nine or ten years possibly about nine or ten misdemeanors.
Q. Did you pay fines or did you serve time for these misdemeanors?
A. I paid fines.
Q. Do you recall how much in the way of fines you may have paid for misdemeanors total?
A. Yes. I paid a total of $445 in fines.
Q. Doug, have you ever been convicted of a felony?
A. Yes, I have, one.
Q. One time?
A. Right.
Q. Doug, these misdemeanors, this felony you told me about, were you found guilty by a judge or a jury?
A. No, I was not; I pled guilty.
Q. You pled guilty?

*1152 A. Yes.
Q. Why did you plead guilty?
A. Because I was guilty.
Q. How did you plead to this charge against you that you are here for today?
A. Not guilty.
Q. Why did you plead not guilty, Doug?
A. Because I'm not guilty.
This line of questioning could have deluded the jury into equating appellant's conviction of assault with intent to commit murder with his previous misdemeanors. Consequently, the state was entitled to interrogate appellant regarding the nature of his prior felony in order to negate the delusive innuendoes of his counsel. As stated by one learned scholar:
[T]he rule limiting the inquiry to the general facts which have been stated in the direct examination must not be so construed as to defeat the real objects of the cross-examination. One of these objects is to elicit the whole truth of transactions which are only partly explained in the direct examination. Hence, questions which are intended to fill up designed or accidental omissions of the witness, or to call out facts tending to contradict, explain or modify some inference which might otherwise be drawn from his testimony, are legitimate cross-examination.
4 Jones on Evidence, Cross Examination of Witnesses § 25:3 (6th Ed. 1972) (footnote omitted). A defendant cannot take advantage on appeal of a situation which he has created at trial. See Sullivan v. State, 303 So.2d 632 (Fla. 1974); White v. State, 348 So.2d 1170 (Fla. 3d DCA 1977); Jackson v. State, 336 So.2d 633 (Fla. 4th DCA 1976).
Appellant next argues that the trial court erred in admitting the testimony of four witnesses introduced by the state in its case in chief. Initially, appellant contends that the testimony of Edith Veal and Muriel Bergner, placing him in the immediate area where the crime was committed at the approximate hour of its commission, should have been excluded for three reasons: (1) the two witnesses were unable positively to identify him and, therefore, their testimony was irrelevant; (2) assuming there had been a positive identification, there was no relevance between Mrs. Veal's and Mrs. Bergner's experience and the crimes committed; and (3) the testimony of the two women did not suggest an attempt to commit similar crimes against them.
Any testimony relevant to prove the fact in issue is admissible unless precluded by some specific rule of exclusion. Johnson v. State, 130 So.2d 599 (Fla. 1961); Williams v. State, 110 So.2d 654 (Fla. 1959). Furthermore, relevant evidence will not be excluded merely because it points to commission of a separate crime, unless its sole relevance is to point up bad character or the criminal propensity of an accused. Mackiewicz v. State, 114 So.2d 684 (Fla. 1959); Williams v. State; Jordan v. State, 171 So.2d 418 (Fla. 1st DCA 1965). As appellant correctly notes, the testimony of Edith Veal and Muriel Bergner did not present evidence of another crime, thereby suggesting appellant's criminal propensities. Because appellant has not suggested any other specific rule mandating that this testimony be excluded, the witnesses' testimony is admissible if it is relevant.
Although appellant argues that the testimony of Mrs. Veal and Mrs. Bergner is irrelevant because they failed to identify him, he ignores the fact that both witnesses stated that the person who attempted to gain entrance to their homes met the general description of appellant. Both women described an individual closely resembling appellant who, on October 13, 1973, was in the immediate area where the crime was committed at the approximate time of its commission. Therefore, their testimony was relevant and admissible as to the issue of identity. Appellant's contentions are merely questions for the jury as to the weight to be accorded the testimony.
*1153 Appellant also argues that the testimony of Faith Gertner and William Smith was irrelevant because the incident which they described occurred almost six months before the instant crime. Similarly, appellant submits there was no factual thread connecting the two events. We disagree. Mrs. Gertner's testimony was admissible because she was able to identify the appellant and because, allegedly, she established that a common plan or scheme was employed by appellant to gain admittance to the victims' homes. Bryant v. State, 235 So.2d 721 (Fla. 1970); Winstead v. State, 91 So.2d 809 (Fla. 1956).
Appellant's third point is that he was denied due process and equal protection of law when he was charged under section 782.04(1)(a), Florida Statutes (1975), the first degree murder statute, rather than for murder in the second degree under section 782.04(2). This Court's decisions in Adams v. State, 341 So.2d 765 (Fla. 1976), and State v. Dixon, 283 So.2d 1 (Fla. 1973), dictate that appellant's argument must fail on this issue.
Appellant's fourth point has been decided adversely to his cause in State v. Dixon.
Appellant argues further that the trial court violated the principles espoused in Tedder v. State, 322 So.2d 908 (Fla. 1975), in overruling the advisory verdict of the jury for a life sentence. During the sentencing phase of the proceedings the court found three aggravating circumstances under section 921.141(5), Florida Statutes (1975): (1) that appellant was previously convicted of a felony involving the use or threat of violence to the person [subsection (b)]; (2) that the crime was committed while appellant was engaged in the commission of a rape [subsection (d)]; and (3) that the crime was especially heinous, atrocious and cruel [subsection (h)]. The finding of the second aggravating circumstance under section 921.141(5)(b) was clearly proper. Further, the trial judge determined correctly that the crime was especially heinous, atrocious or cruel. The evidence disclosed that the victim, a sixty-seven-year-old woman, was so brutally beaten about the head and chest that her blood was splattered upon the walls and ceiling of her residence. According to the testimony of Dr. Rosier, the medical examiner who viewed the scene of the crime and performed an autopsy on Ms. Mears, the pattern of blood stains on the wall indicated that she was either sitting or standing when the attack began. At some point the victim was thrown to the floor and her ribs were crushed, resulting in death by asphyxiation within four minutes thereafter. (Tr. vol. III, 499-512.) The rape occurred either shortly before or immediately following Ms. Mears' death. The agony and horror which this elderly woman must have suffered prior to her death is evident. As we acknowledged in State v. Dixon, 283 So.2d at 9, section 921.141(5)(h) applies to "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." The killing in this case falls squarely within this category when viewed in the context of prior decisions of this Court where we have approved a finding of this aggravating circumstance. See Washington v. State, 362 So.2d 658 (Fla. 1978) (victim repeatedly stabbed while tied to a bed, with evidence of suffering); Barclay v. State, 343 So.2d 1266 (Fla. 1977) (victim stabbed while begging for mercy and then killed by shots to the head); Adams v. State (victim beaten with fire poker past point of submission and until grossly mangled.)
The appellant further contends that the trial judge improperly found under section 921.141(5)(b), Florida Statutes (1975), that he had been previously "convicted" of a felony involving the use or threat of violence to the person. At the time of his trial in the instant case, McCrae had already pleaded guilty to assault with intent to commit murder upon Faith Gertner and William Smith. Pending sentencing on this charge, he was released on bail without adjudication of guilt, awaiting the completion of the presentence investigation *1154 report. Shortly after his release on bail, McCrae, as found by the jury in this cause, sexually assaulted and murdered the victim, Margaret Mears. McCrae contends that he had not been convicted of his prior offense against Gertner and Smith because the judge had not adjudicated him guilty. We reject this contention and find the plea of guilty to a felony involving the use or threat of violence to the person is a conviction which may be used in aggravation under section 921.141(5)(b) and was so intended by the legislature.
In Robinson v. State, 373 So.2d 898 (Fla. 1979), we held that a plea of guilty is an in-court confession and an agreement for the court to enter a judgment. We further cited with approval the decision of the United States Supreme Court in Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969), which stated: "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." [Emphasis supplied.] These decisions recognize that once a plea of guilty has been accepted by a court, it is the conviction and the only remaining step is the formal entry of judgment and the imposition of sentence.
Further, in determining whether the death penalty should be imposed, a court must consider the various circumstances set forth in section 921.141. These circumstances aid the judge in establishing the overall character analysis of a defendant so that he may properly determine the appropriate sentence within the limits set forth in the law. Elledge v. State, 346 So.2d 998 (Fla. 1977). Prior convictions of violent felonies is an extremely important factor in the sentencing process. Given the purpose of this process, it is illogical that a plea of guilty to a serious offense involving violence that is disposed of by a sentence that includes a withholding of adjudication of guilt should be treated differently than a plea of guilty with court adjudication. Both contain an unrefuted factual determination that the defendant committed this prior criminal offense.
In interpreting "conviction" for the purposes of section 921.141(5)(b), we reject any analogy to the habitual offender statute set forth in section 775.084. The habitual offender statute creates a separate criminal offense that requires both (a) a determination of guilt by a jury or a plea of guilty, and (b) an adjudication of guilt by the court. Washington v. Mayo, 77 So.2d 620 (Fla. 1955). This statute was enacted by the legislature "to protect society from habitual criminals who persist in the commission of crime after having been theretofore convicted and punished for crimes previously committed." Joyner v. State, 30 So.2d 304, 306 (Fla. 1947). It is a new and separate criminal offense, and "adjudication of guilt" is a necessary element of the offense.
On the other hand, this Court in Elledge v. State recognized the purpose for considering prior criminal conduct in the capital sentencing process is to ensure a proper character analysis to determine if the ultimate penalty of death should be imposed. Specifically, we said:
[W]e believe the purpose for considering aggravating and mitigating circumstances is to engage in a character analysis of the defendant to ascertain whether the ultimate penalty is called for in his or her particular case. Propensity to commit violent crimes surely must be a valid consideration for the jury and the judge.
346 So.2d at 1001. The fact that an adjudication of guilt is a prerequisite, as a technical element of the offense, to a conviction under the habitual offender statute, is thus of no analogous value to the instant case. The word "convicted" as used in section 921.141(5)(b) means a valid guilty plea or jury verdict of guilty for a violent felony; an adjudication of guilt is not necessary for such a "conviction" to be considered in the capital sentencing character analysis.
The final sentencing issue concerns the appellant's attempt to prove in mitigation under section 921.141(6)(b) that he was under the influence of extreme mental or emotional disturbance at the time the *1155 crimes were committed. In our view, the trial judge rejected this mitigating circumstance. The judge noted in his findings of fact that "the mitigating circumstances are very minor" and that the aggravating circumstances "greatly outweigh any mitigating circumstances." As to this specific mitigating circumstance, however, the trial judge remarked that the doctor through whose testimony appellant submitted his proof, "could not with any degree of medical certainty" say that appellant satisfied the criteria of subsection (6)(b). However, it is apparent to us that the jury must have found this mitigating circumstance to exist. There is no other explanation for their advisory verdict in view of the heinous nature of the killing. We find their recommendation has no reasonable basis under the circumstances of this cause.
We realize the advisory recommendation of the jury must be accorded a great weight, Tedder v. State, 322 So.2d 908 (Fla. 1975), but in our view the decision of the trial judge to impose the death sentence over the jury recommendation of life was in these circumstances proper. Hoy v. State, 353 So.2d 826 (Fla. 1977); Dobbert v. State, 328 So.2d 433 (Fla. 1976), aff'd, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), aff'd after Gardner order, 375 So.2d 1069 (1979).
For the reasons expressed in this opinion, we affirm the appellant's conviction and sentence of death.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ENGLAND and ALDERMAN, JJ., concur.
SUNDBERG, C.J., concurs specially in result with an opinion.
SUNDBERG, Chief Justice, concurring specially in result.
While I concur with the result reached by the majority, I must respectfully register my disagreement with one aspect of the opinion. Based on the authority of Robinson v. State, 373 So.2d 898 (Fla. 1979), and Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), I agree that a plea of guilty to a violent felony properly may be considered as an aggravating circumstance under section 921.141(5)(b), Florida Statutes (1977). As stated in Boykin, such a plea is more than a confession, "it is itself a conviction." 395 U.S. at 242, 89 S.Ct. at 1711, 23 L.Ed.2d 274. Absent any suggestion by the defendant that the plea was involuntarily entered or the pendency of a motion to set it aside, the formality of entry of judgment and imposition of sentence by the Court should not be dispositive of the vitality of the conviction. Where appeal of a conviction is pending at the time of sentencing under chapter 921, however, quite another question is presented. Consequently, I cannot subscribe to the more sweeping statement by the majority which rejects any analogy to the habitual offender statute, section 775.084, Florida Statutes (1975). My reasons for this view are expressed in my dissent in Peek v. State, 395 So.2d 492 (Fla. 1980), and no useful purpose would be served by repeating them here.

ON REHEARING
PER CURIAM.
This cause was initially argued on March 5, 1975. It was subsequently scheduled for reargument on September 20, 1977. Appellant's counsel thereafter requested that this Court relinquish jurisdiction so that he could file a petition for post-conviction relief under Rule of Criminal Procedure 3.850 on the ground that a witness committed perjury during trial. We granted the request and reliquished jurisdiction by our order dated November 29, 1978. After an evidentiary hearing, the trial court denied appellant's petition for post-conviction relief. Appellant filed a notice of appeal on March 8, 1979. The record was received by the Court, but, through inadvertence, the briefs were not made available for Court review. As stated in our original majority opinion, "[a]lthough appellant filed a notice of appeal from that order, he has not informed this Court of the grounds of his attack. Nevertheless, we have reviewed *1156 the record of the rule 3.850 proceedings. We are satisfied that the trial judge correctly ruled on the motion and, accordingly, that ruling is affirmed."
On this petition for rehearing, the briefs filed in the post-conviction proceeding have been made available to the Court. Appellant's brief asserts that the trial court erred in finding the witness's testimony at trial to be true and the testimony at the post-conviction hearing to be false. The remaining points are dependent upon this alleged erroneous finding. We have reviewed the record of the post-conviction relief proceeding in light of the assertions made in appellant's brief, and we have concluded that the evidence is sufficient to affirm the trial court's finding. Our opinion is corrected to reflect our consideration of the appellant's briefs.
The remaining issues set forth in the petition for rehearing are without merit and are denied.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ENGLAND and ALDERMAN, JJ., concur.