739 So.2d 672 (1999)
John MOSLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 98-1502.
District Court of Appeal of Florida, Fourth District.
August 25, 1999.
*674 Richard L. Jorandby, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Rochelle L. Kirdy, Assistant Attorney General, West Palm Beach, for appellee.
SCHACK, LARRY, Associate Judge.
The appellant (the defendant below) appeals his convictions for resisting an officer without violence, possession of cocaine, and possession of drug paraphernalia. We affirm.
On the evening of October 25, 1996, Lt. Wagner and Officer Bradford of the Hollywood Police Department drove up to a group of people standing on the street. The defendant was in that group, and when he noticed the officers, he put his hands in his pockets and began to quickly walk away. Both officers testified that at that point, they had no reasonable suspicion nor probable cause to believe the defendant had engaged in any criminal behavior. Both officers ran after the defendant. As they did so, they yelled "Stop, Hollywood Police." The defendant then ran from the officers. As he ran, he pulled his hands from his pockets and dropped an object to the ground. Officer Bradford stopped momentarily to retrieve it while Lt. Wagner continued the chase. Based on their training and experience, both officers immediately recognized the object as a crack cocaine pipe. Lt. Wagner recognized it as such as soon as the defendant pulled it from his pocket. Officer Bradford immediately recognized the pipe as illegal contraband when he picked it up off the ground. Lt. Wagner and Officer Bradford again yelled "Stop, Hollywood Police" to the defendant. The defendant continued to run. Lt. Wagner and Officer Bradford continued to chase the defendant. They lost sight of him momentarily and then located him on the roof of a one-story apartment building. The defendant was ordered to get off the roof. He complied, attempted to run, was detained and arrested. A chemical test of the pipe confirmed it contained cocaine residue. After a jury trial, the defendant was convicted on all three counts.
The defendant raises three issues in this appeal. First, that the trial court erred in not granting his motion for judgment of acquittal on the charge of resisting an officer without violence. Second, that the trial court erred in permitting the prosecution to elicit the specific nature of the defendant's prior convictions during cross-examination. Finally, the defendant claims that the trial court erred in permitting the introduction of a laboratory report in evidence over his objection.

The Motion For Judgment Of Acquittal
The standard for reviewing the denial of a motion for judgment of acquittal was described by this court in Scott v. State, 693 So.2d 715, 716 (Fla. 4th DCA 1997) as follows:
When a defendant moves for a judgment of acquittal, he admits all facts adduced in evidence and every conclusion favorable to the state that a jury might reasonably and fairly infer from the evidence. The trial court should not grant *675 a motion for judgment of acquittal unless there is no view of the evidence which the jury might take favorable to the state that can be sustained under the law. Rogers v. State, 660 So.2d 237 (Fla.1995) (citing Taylor v. State, 583 So.2d 323 (Fla.1991)). The test to be applied on review of the denial of a motion for judgment of acquittal is whether the jury might reasonably conclude the evidence fails to exclude every reasonable hypothesis of innocence.
Id. at 716 (citations omitted).
"To support a conviction under section 843.02, the state must show: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty." Jay v. State, 731 So.2d 774, 24 Fla. L. Weekly D956 (Fla. 4th DCA 1999)(citing S.G.K. v. State, 657 So.2d 1246, 1247 (Fla. 1st DCA 1995)). If the officer has either reasonable suspicion to stop the defendant, Calliar v. State, 714 So.2d 1134, 1135 (Fla. 1st DCA 1998), rev. granted, 727 So.2d 903 (Fla. 1998), or probable cause for arrest, Jones v. State, 640 So.2d 204, 205 (Fla. 4th DCA 1994), the element of the lawful execution of a legal duty is satisfied. The defendant is correct that "[f]light, standing alone, does not constitute obstructing an officer nor does it give rise to a well-founded suspicion of criminal activity." S.G.K., 657 So.2d at 1248; see Breedlove v. State, 605 So.2d 589 (Fla. 4th DCA 1992); F.E.C. v. State, 559 So.2d 413, 414 (Fla. 2d DCA 1990). "An individual may be guilty of unlawfully obstructing an officer if he flees while knowing of the officer's intent to detain him and the officer is justified in making a stop pursuant to the Stop and Frisk Statute." F.E.C., 559 So.2d at 414.
In the case before us, the officers' original pursuit of the defendant lacked both reasonable suspicion and probable cause. Had that been the only evidence of resisting, we would reverse. However, the evidence placed before the jury included testimony that during the initial invalid pursuit, the defendant dropped his cocaine pipe and it was found by Officer Bradford. As discussed above, Lt. Wagner recognized it as a cocaine pipe as soon as the defendant pulled it from his pocket. Officer Bradford immediately recognized the pipe as illegal contraband when he picked it up off the ground. At that point, the officers had probable cause to arrest the defendant. The officers continued to yell, directing the defendant to stop. His flight, in conjunction with probable cause for arrest, was sufficient to establish guilt of the charge. The trial court properly denied the defendant's motion for judgment of acquittal.

The Impeachment Of The Defendant
In his second point on appeal, the defendant claims that the trial court erred in permitting the state to cross-examine him about the specifics of his prior criminal record. "[A] trial court is given broad discretion when making a determination as to whether to admit or exclude evidence, and that decision will not be overturned absent a showing of an abuse o[f] discretion." Traina v. State, 657 So.2d 1227, 1229 (Fla. 4th DCA 1995).
The authority to impeach a witness through the use of prior criminal convictions is found in Florida Statute section 90.610(1) which provides:
A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment, ....
§ 90.610(1), Fla. Stat. (1997).
The proper method for impeaching a witness by the use of prior convictions has been set forth by this court. Counsel is required to use the following format:

*676 Q: Have you ever been convicted of a felony?[1]
(If the answer is affirmative:)
Q: How many times?
Q: Have you ever been convicted of a misdemeanor involving dishonesty or false statement?[2]
(If the answer is affirmative:)
Q: How many times?
Counsel may not ask the questions of the witness unless he or she has knowledge that the witness has in fact been convicted of the crime or crimes. See Cummings v. State, 412 So.2d 436, 439 (Fla. 4th DCA 1982).
The general rule is that "[i]f [the witness] denies the conviction, the opposing party may produce the record of the conviction. In either event, the inquiry must stop at that point. The matter may not be pursued to the point of naming the crime." Kyle v. State, 650 So.2d 127, 127 (Fla. 4th DCA 1995). An exception to the general rule occurs when a defendant opens the door to a broader inquiry.[3] In Fotopoulos v. State, 608 So.2d 784 (Fla. 1992) our supreme court ruled:
Under section 90.610, Florida Statutes (1989), a party may attack the credibility of any witness, including the accused, by evidence of a prior felony conviction. Unless the witness answers untruthfully, this inquiry is generally restricted to the existence of prior convictions and the number of convictions. However, when a defendant attempts to mislead or delude the jury about his prior convictions, the State is entitled to further question the defendant concerning the convictions in order to negate any false impression given.
Id. at 791 (citations omitted). In Fotopoulos, the defendant was asked whether he had previously been convicted of a felony. He responded that he "was at one time convicted of six counts." On cross-examination the defendant contended all six felonies arose at the same time from a single incident. The state was then permitted to go into the details of the defendant's prior convictions for counterfeiting. The supreme court held the inquiry was proper.
In Bozeman v. State, 698 So.2d 629 (Fla. 4th DCA 1997), this court discussed the subject extensively. We said:
To open the door to evidence of prior bad acts, the defense must first offer misleading testimony or make a specific factual assertion which the state has the right to correct so that the jury will not be misled. See Brown v. State, 579 So.2d 898 (Fla. 4th DCA 1991); Dodson v. State, 356 So.2d 878 (Fla. 3d DCA 1978); Hernandez v. State, 569 So.2d 857 (Fla. 2d DCA 1990); Davis v. State, 216 So.2d 87 (Fla. 2d DCA 1968); Allred v. State, 642 So.2d 650 (Fla. 1st DCA 1994); Fletcher v. State, 619 So.2d 333 (Fla. 1st DCA 1993). The "opening the door" concept is based on considerations of fairness and the truth-seeking function of a trial, where cross-examination reveals the whole story of a transaction only partly explained in direct examination.
For example, in McCrae v. State, 395 So.2d 1145 (Fla.1980), defense counsel through his questions on direct examination "tactfully attempted to mislead the jury into believing that [the defendant's] prior felony was inconsequential." Id. at 1151. The supreme court held that the prosecutor was entitled to elicit the nature of the prior felony conviction on cross-examination. The court held that the defendant's
line of questioning could have deluded the jury into equating appellant's conviction of assault with intent to commit murder with his previous misdemeanors. *677 Consequently, the state was entitled to interrogate [the defendant] regarding the nature of his prior felony in order to negate the delusive innuendoes of his counsel.

Id. at 1152.
Other cases illustrate the types of defense deceptions that open the door to evidence of prior bad acts. When a defendant attempted to enhance his credibility by pointing out that he had been a law enforcement officer, this court found no error in the state's impeachment evidence that the defendant had been fired from his job as a correctional officer. Brown, 579 So.2d at 899. The defendant in Allred claimed a lack of violent propensity and asserted that he had never hit any woman; the first district held that such testimony opened the door to rebuttal evidence that the defendant had hit his first wife and a former girlfriend. Allred, 642 So.2d at 651. In Ashcraft v. State, 465 So.2d 1374 (Fla. 2d DCA 1985), the defendant opened the door to evidence about a prior rape conviction by testifying that he "had never hurt anyone." Id. at 1375. The Fletcher defendant's testimony that he had "never pointed a gun at anybody" and that he was a "responsible user of firearms" justified the state's later introduction of evidence about the defendant's reckless use of a gun at a time prior to the incident at issue. Fletcher, 619 So.2d at 334.
Similarly, when a defendant testified "that he had never done any drug deals in his life, he opened the door to questioning about a heroin deal he had arranged two days prior to the [crimes at issue]." Hernandez, 569 So.2d at 859. The direct examination of the defendant in Dodson "created a basis for an inference that there was one prior conviction for auto theft and that there were ... crimes other than theft", the third district held that such testimony opened the door to the state's proof that the "other crimes" included auto theft and theft of property. Dodson, 356 So.2d at 879.
Id. at 630-631.
During the direct examination of the defendant at trial in this case, the following occurred:
Q: Have you ever been convicted of a felony before?
A: Yes, sir.
Q. How many times?
A: Six.
Q: Did you do what the officers who have come to testify, did you do what they're saying you did?
A: No, sir, I don't use drugs.

(* * *)
Q: Did you have any crack cocaine pipe or any baggie on you that night?
A: No, sir.
Q: Did you drop did you even pick up a cocaine pipe and drop it at any time?
A: I don't deal with the cocaine. I don't use cocaine. I don't deal with any pipe. What's the use having a pipe in my possession?

(* * *)
A: ... I said that wasn't me, sir. Then Harmon was telling him this couldn't have been the young man, this young man don't deal with cocaine. I don't even smoke cocaine. I told them you can all test that, take a urinalysis of this. They said prove it in court, which I'm trying.
(* * *)
Q: Are you the person that the police have come in and testified to that ran from them on October 25th, 1996?
A: No, sir. They got the wrong person.
Q: Are you the person that dropped cocaine or a pipe on October 25th, 1996?

*678 A: No, sir. They can take a urinalysis right now. I'm a healthy, young guy. I ain't never used no crack cocaine. Never had no pipe in my possession. I don't even operate like that.

(Emphasis added.)
As a result of the highlighted statements during the defendant's direct examination, the state argued that the defendant opened the door to questions concerning the specific nature of the defendant's felony convictions. After extensive argument, the trial court ruled that the defendant had in fact opened the door to such questioning. The trial court permitted the state to ask the defendant whether he had been convicted of specific drug-related offenses included in his felony record. The following occurred during cross-examination by the prosecutor:[4]
Q: Mr. Mosley, did I hear you right that you don't use drugs?
A: Yes, sir.
Q: You never used drugs?
A: Never inhale no drugs.
Q: You don't deal drugs?
A: When I was a juvenile.
Q: When you were an adult?
A: When I was a juvenile.
Q: Have you ever dealt drugs when you were an adult?
A: No, sir.
Q: Have you ever been sentenced for delivering cocaine when you were an adult?
A: I'm saying I was a juvenile. They waved [sic] me over. I sold the police cocaine for a hundred dollars. He came to me and said did I have a rock for a hundred dollars. I think, I'd like to think it was in '89 or '90 or '88.
Q: Let's start with that delivery. You were convicted of delivery of cocaine in 87-10178, is that correct?
A: Right. I sold the police a piece of rock for a hundred dollars.
Q: So back then you had cocaine on you, is that correct?
A: Right, I distributed.
Q: But on October 25th, 1996 you didn't have cocaine on you?
A: I didn't have no cocaine pipe, no cocaine. I only had money and identification, and I was inside of the van helping Mr. Marvin fix on the van.
Q: Now, let's talk about 87-5370 if we could for a minute. Possession of cocaine, do you remember that offense?
A: Yes, sir.
Q: Were you convicted of that offense?
A: Yes, sir.
Q: Were you possessing cocaine then?
A: No, I didn't possess it. I ain't possess it. They made up a story and say I tamper with evidence. Say I throw something down the drain.
[DEFENSE COUNSEL]: That's beyond the scope.
[DEFENDANT]: I want the truth
[DEFENSE COUNSEL]: It's beyond the scope.
THE COURT: Mr. Mosley, let your attorney put his objection on the record. What's the objection?
[DEFENSE COUNSEL]: It's beyond the scope.
THE COURT: You can ask him to the nature of the charge and see if he admits to that.
[DEFENSE COUNSEL]: Which he already did.
THE COURT: Well, everyone was Mr. Porth [the prosecutor], next question.
[DEFENDANT]: I just told him that
THE COURT: Mr. Mosley, wait for a question.

*679 BY [THE STATE]:
Q: 87-5370, possession of cocaine
A: It was supposed to be possession, it was
Q: Could you let me finish? Were you convicted of that crime, sir?
A: There were three charges on the same time. That's what I'm trying to tell you.
Q: I'm not asking you to explain it.
A: I copped out to all three charges.
Q: That's a different case number than the one I just read you?
A: The delivery?
Q: That's a different case?
A: I think that's up a year.
Q: The delivery. Now, possession, you're admitting to the possession, is that correct, sir?
A: In '87 I am saying there was no cocaine retrieved. They charged me with all this here. They charged me with possession, tampering with evidence and resisting arrest with the same thing, without violence.
Q: And did
A: The PD told me it would be in my
Q: I think at this point you need to keep your mouth shut.
[DEFENSE COUNSEL]: Objection, out of control.
THE COURT: Stop. Stop, Mr. Mosley. Just ask another question, Mr. Porth.
[THE STATE]: Judge, at this point, given the response we just had, I'd like to be able to ask the next question.
THE COURT: Just ask another question about a different file, if you have one.
BY [THE STATE]:
Q: 86-3427, possession with intent to deliver.
A: Right, that's the one I was telling you about.
Q: Were you convicted of that, sir?
A: I think I went to trial on that.
Q: Were you convicted?
[DEFENSE COUNSEL]: Judge, may I have a moment to talk to my client, please?
THE DEFENDANT: I didn't do time for
THE COURT: Your attorney is trying to object.
THE DEFENDANT: This man trying to confuse me. I'm trying to really listen to what he say. I told him before when he asked me, I was convicted as a juvenile.
[DEFENSE COUNSEL]: Can Your Honor instruct my client?
THE COURT: I'm trying to do that. Mr. Mosley, wait a minute. Let [your attorney] talk.
THE DEFENDANT: But the man asked me a question.
THE COURT: Okay. I'm telling you right now to remain quiet for a moment until I get this sorted out and see what [your attorney] wants.
[DEFENSE COUNSEL]: I need just a moment to confer and talk to my client.
(* * *)
The trial court excused the jury and provided defense counsel an opportunity to speak with his client. Thereafter, the jury returned, and the following cross-examination continued:
BY [THE STATE]:
Q: 86-3427, possession with intent to deliver, can we agree that you are convicted of that crime?
A: Yes, sir.
Q: 89-17345CF10A, tampering with evidence, to wit, cocaine. Can we agree that you were convicted of that crime?
A: Yes, sir.
Q: You said on the record you've been convicted of six felonies, is that correct?

*680 A: Right.
Q: And it's your testimony today that you don't use drugs?
A: I don't inhale drugs, let's puts it like that because you all getting this misunderstood.
Q: And it's your testimony today that Marvin is an adviser to you?
A: Yeah, he give me positive words, you know.
Q: Did Marvin teach you how to commit felonies?
A: No.
[DEFENSE COUNSEL]: Judge, I'm going to object. That's irrelevant and improper in every way.
THE DEFENDANT: I didn't admit I was charged with it.
THE COURT: Overruled.
BY [THE STATE]:
Q: You didn't commit the felonies we just went through?
[DEFENSE COUNSEL]: Objection, asked and answered.
THE DEFENDANT: I was charged with it.
THE COURT: Overruled.
THE DEFENDANT: As far as me actually, really, really doing it, no. The only thing I did was possess stolen property, that was the only thing.
THE COURT: Let's move on to another subject matter, okay.
THE DEFENDANT: That's all, possession stolen property.
BY [THE STATE]:
Q: And it's your testimony today that you don't use cocaine?
A: Yes, sir, meaning I never inhaled it, toking it like that, smoking it.
Q: You do that?
A: No, I'm telling you I don't smoke drugs where they charged me with this.
Q: Do you have any creative uses for drugs?
A: Not healthy for you.
[DEFENSE COUNSEL]: Object.
THE DEFENDANT: He asking me a question.
THE COURT: This is what I'm going to tell you, when you hear [defense counsel] objecting, you need to stop so I can hear him and then I'll rule so you might not have to answer that question.
THE DEFENDANT: How can I stop when I'm talking to this man?
THE COURT: Do the best you can.
(* * *)
Q: And you're not the guy that dropped the pipe on that day?
A: I'm not the guy that did anything.
Q: They got the wrong guy?
A: They got the wrong guy.
(* * *)
Q: Did they get the wrong guy in '86 with the intention to deliver?
A: Yes, sir.
Q: Did they get the wrong guy on the possession of cocaine in '87?
A: Yes, sir.
Q: Did they get the wrong guy on the delivery in '87?
A: No, they didn't get the wrong guy.
Q: You're admitting to that one?
A: I did it. The man came to me with a hundred dollars and told me to get him a rock.
Q: But on October 25th they got the wrong guy?
A: Yes, sir.
We agree with the state that the highlighted portions of the defendant's direct examination opened the door to more than whether the defendant used cocaine. Clearly his statements were intended to convey to the jury that he had nothing whatsoever to do with cocaine. The testimony could not have conveyed to the jury only the fine distinction appellant's counsel would draw between personal cocaine use *681 and involvement with cocaine in general terms.
It was permissible for the state to ask the defendant on cross-examination whether the defendant claimed he did not use drugs or deal in drugs. The inquires concerning the defendant's convictions for delivery of cocaine, possession of cocaine, possession of cocaine with intent to deliver, and tampering with evidence (cocaine), were all relevant and proper to counter the defendant's claimed lack of any involvement with cocaine. It was likewise permissible for the state to ask the defendant whether he had cocaine in his possession in each of those instances. Due to the defendant's identity defense, and his claims during cross-examination that the police had the wrong person in almost all of his prior convictions, it was permissible for the state to inquire in that area as well.[5]
This issue was entirely the defendant's creation. He initially opened the door to the state's cross-examination by answering his own attorney's questions on direct examination in a non-responsive fashion. He went even further in his answers to the state's questions on cross-examination. The record reveals that the trial court, the defendant's trial counsel, and even the prosecutor attempted to stop the defendant from self immolation without success. "A defendant cannot take advantage on appeal of a situation which he has created at trial." McCrae, 395 So.2d at 1152.[6]

The Laboratory Report
The state called Alan Greenspan as a witness at trial. Mr. Greenspan had been a forensic chemist employed by the Broward County Sheriff's Office. He testified that he tested the residue found on the cocaine pipe retrieved in this case. His testing established that the residue on the pipe contained cocaine. During the course of his testimony, the state introduced Mr. Greenspan's laboratory report containing the results of his testing. The defendant objected on the basis that it was hearsay. We agree with the defendant that the state fell far short of laying a foundation for the introduction of the report as a business record under § 90.803(6), Fla. Stat. (1997). Although the report was improperly admitted by the trial court, there were several occasions where the witness testified, without reference to the report and without objection, that the residue in the pipe contained cocaine. We find there was no prejudicial error. See Goodwin; § 924.051, Fla. Stat. (1997).
The judgment of the trial court is affirmed.
GROSS and TAYLOR, JJ., concur.
NOTES
[1] See Cummings v. State, 412 So.2d 436, 439 (Fla. 4th DCA 1982).
[2] See Bobb v. State, 647 So.2d 881, 885 (Fla. 4th DCA 1994).
[3] Although this case involves the defendant as a witness, the rule and exception apply to any testifying witness.
[4] We quote the relevant passages at length. We also include those portions of the record reflecting how the defendant contributed to the difficulties facing the trial court on this issue.
[5] The state should not have asked the defendant whether he was "sentenced" for one of the felonies, whether a defense witness taught him how to commit felonies, or whether the defendant had "creative uses" for drugs. Based on the totality of the record, the defendant has not shown that those questions amounted to prejudicial error. See Goodwin v. State, 721 So.2d 728 (Fla. 4th DCA 1998), review granted, 728 So.2d 202 (Fla.1998); § 924.051 Fla. Stat. (1997).
[6] The defendant raised the issue of improper final argument in his motion for new trial. He did not pursue that issue on appeal.