787 So.2d 136 (2001)
Oscar BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-607.
District Court of Appeal of Florida, Fourth District.
April 25, 2001.
*137 Carey Haughwout, Public Defender, and Dea Abramschmitt, J.D., Special Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.
SHAHOOD, J.
We reverse appellant's conviction for armed kidnapping, armed burglary of a dwelling, and three counts of aggravated assault because of improper questioning of a defense witness by the prosecutor.
The charges against appellant arose after he allegedly burst into the apartment of his ex-girlfriend, Thomasina Sawyer (Sawyer), waived a handgun at her and her friends, and then abducted her at gun-point. At trial, Sawyer and three of the four friends who had been present in the apartment testified that appellant broke down the door to the apartment, waived a handgun and threatened to kill everyone in the room. He then grabbed Sawyer by the hair and pulled her outside with the gun pointed at her head. He continued beating her with the gun and threw her into the door of his truck. After allegedly firing the gun into the air twice, appellant then pushed Sawyer into the truck and drove off.
Sawyer recounted the experience and the events between the kidnapping and appellant's arrest the following day. She testified that she had agreed to stay with appellant at a hotel that night and have sexual intercourse with him because she was afraid. She admitted originally telling the police that appellant did not have a gun when he came into the apartment, but later recanting that story and saying that he did have a gun.
Appellant's defense was that Sawyer went with him willingly because the two needed to discuss their relationship. He denied having a gun and breaking down the door to the apartment. According to appellant, Sawyer's friend, Felicia Graham (Graham) was not happy that Sawyer left with appellant. As they left, appellant heard Graham say, "you know what, I'll show her how to get a n_____ out of your life for good." Appellant testified that he heard that Graham had a friend break the door down after he and Sawyer left. Appellant's testimony about what occurred after he and Sawyer left the apartment was consistent with Sawyer's. Appellant said that Sawyer could have left at any time.
A key witness for appellant was Clifford Mandel (Mandel). Mandel was an acquaintance of appellant's with whom he had played basketball. When appellant was arrested, he called Mandel and told him that Sawyer had had him arrested. According to Mandel, approximately one month later, he was riding his bicycle when Sawyer called to him from a car. When he went over to her, she asked whether he had heard from appellant. *138 Mandel told Sawyer that he had heard from appellant that Sawyer had come up with "ridiculous accusations" against him. Mandel's testimony was that Sawyer then admitted that she made the whole story up because she wanted to get away from appellant and he would not let her get away from him. She allegedly told Mandel that appellant never kicked in the apartment door, did not have a gun, and did not take her at gunpoint. Instead, Sawyer allegedly told Mandel that appellant and she left the apartment holding hands and she could have left at any time. According to Mandel, Sawyer promised him that she would tell the police the truth.
On cross examination, the prosecutor asked Mandel, "And you have been convicted of a felony before, haven't you?" He answered "no", and the prosecutor continued, "You haven't been convicted twice?" Again, Mandel responded, "no." Defense counsel objected.
At a sidebar conference, the prosecutor told the court that Mandel had testified in his deposition that he had been arrested and found guilty of possession of cocaine in Nevada. When defense counsel pointed out that, in Nevada, that crime was considered a gross misdemeanor, the prosecutor argued that it is a felony in Florida. As to the second felony conviction, the prosecutor again referred to Mandel's deposition testimony that he had a case in Florida for purchasing cocaine, but was not sure if he had been adjudicated in that case. She asserted that purchase of cocaine was a mandatory adjudication in Florida.
The court agreed that it would be easy to conclude that the Nevada charge was a felony since Mandel had been in jail for 90 days and on probation for three years. There was some concern, however, about the Florida charge. The prosecutor then asked for a minute to look on the computer to find the disposition of Mandel's Florida case. Defense counsel informed that he had checked the computers the day before and had found only a withhold of adjudication on a possession of cocaine charge.
The prosecutor then admitted that she had no evidence at that time that Mandel had been adjudicated on the Florida charge. In addition, she admitted that during his deposition, Mandel had said that the Nevada crime was a gross misdemeanor. As a result, the court sustained the objection, but denied the motion for mistrial, and instructed the jury to disregard the prosecutor's last question as there was no evidence that the witness had been convicted of a felony.
The court's remedy did not go far enough in curing the prejudice which resulted from the improper questioning. Section 90.610, Florida Statutes (2000), states that, "[a] party may attack the credibility of any witness, ... by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of [one] year under the law under which the witness was convicted,...." See § 90.610(1), Fla. Stat. (1997). It is error, however, to allow a witness to be impeached pursuant to section 90.610(1) when he was not adjudicated guilty of the prior offense. See State v. McFadden, 772 So.2d 1209 (Fla.2000).
The proper method of impeaching a witness with prior convictions is to first ask whether the witness has ever been convicted of a felony. See Mosley v. State, 739 So.2d 672 (Fla. 4th DCA 1999). If the witness admits the conviction, the questioner may ask, "how many times," and whether the witness has ever been convicted of a misdemeanor involving dishonesty. Id. at 675. If the witness denies the conviction, the opposing party may produce the record of conviction. Id.; see also Green v. State, 720 So.2d 1150, 1151 *139 (Fla. 4th DCA 1998)(if a witness does not admit his prior convictions, the only proper method of impeachment is to introduce certified records of the convictions). In either event, no further questioning is permitted. Id. Counsel may not ask any questions of the witness unless he or she has knowledge that the witness has in fact been convicted of the crime or crimes. See Cummings v. State, 412 So.2d 436, 439 (Fla. 4th DCA 1982), limited on other grounds by Bobb v. State, 647 So.2d 881 (Fla. 4th DCA 1994).
In this case, the improper question aside, Mandel denied having the two convictions alluded to by the prosecutor. At that point, the prosecutor had no right to delve further, especially since she was well aware that she did not have certified copies of convictions to support this type of questioning. The improper impeachment was unquestionably prejudicial to appellant, particularly in light of Sawyer's testimony that she and appellant had sexual intercourse at the hotel where she was allegedly being held against her will. Given such testimony, a jury could certainly have believed Mandel's testimony that Sawyer admitted making up the whole story to get appellant to leave her alone.
For these reasons, we reverse appellant's conviction and remand for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
POLEN and KLEIN, JJ., concur.