937 So.2d 273 (2006)
Sylvester DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-3301.
District Court of Appeal of Florida, Fourth District.
September 13, 2006.
*274 Carey Haughwout, Public Defender, and James W. McIntire, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.
MAY, J.
The defendant appeals his conviction and sentence for operating a sports bike without a proper license and driving with a suspended license as a habitual offender. He argues that his counsel's failure to object to numerous questions and comments by the prosecutor constituted ineffective assistance of counsel requiring the reversal of his conviction. We have reviewed the errors and find that collectively they constitute fundamental error. We therefore reverse the defendant's conviction.
In 2000, the defendant filed a lawsuit against the Fort Pierce Police Department, alleging he was "beaten, maced and humiliated" by five officers. He prevailed in his lawsuit.
A sergeant with the Fort Pierce Police Department, who knew about the lawsuit, testified that he saw the defendant riding a red and white Honda sports bike around 1:00 p.m. on February 25, 2003. The sergeant also knew the defendant's license was suspended, but because he was responding to another call, he did not stop *275 the defendant. The sergeant later confirmed the defendant's license suspension.
Around 2:30, the sergeant saw the defendant standing in a driveway about sixty feet from the same sports bike. He told the defendant he had seen him driving the bike and asked him for his driver's license. The defendant produced only an identification card, which the sergeant used to again confirm the suspension of the defendant's license.
When confronted by the sergeant, the defendant denied having driven the sports bike. Nevertheless, he was arrested. According to the sergeant, the key to the bike was found in the defendant's pocket.
Another officer, who also knew of the lawsuit, testified that he too saw the defendant riding the sports bike twice that day, but did not pull him over because he was unaware of the suspended license. Defense counsel used a sworn statement from an internal police investigation to impeach the officer. In that statement, the officer claimed he saw the defendant driving the sports bike the day before, not the day of, the arrest.
At trial, the defendant testified that his girlfriend had driven him to a friend's house before noon, where he had remained until his arrest. He denied riding the sports bike.
Martin Brown, the defendant's friend, also testified that the defendant's girlfriend drove him to Brown's residence before noon, where he had stayed prior to the arrest. According to Brown, another man named Boals arrived on the sports bike.
The defense then called Boals, who testified he was considering purchasing the sports bike from a friend and had been in possession of it for over twenty-four hours. He did not give the key to the defendant and did not let the defendant ride the bike. According to Boals, the key was in the ignition of the sports bike when the police arrested the defendant.
The state charged the defendant with operating a sports bike without a proper license and driving with a suspended license as a habitual offender. The jury found the defendant guilty as charged. The trial court sentenced the defendant to thirty-six months in prison.
The defendant raises a number of issues. Ultimately, he argues that the cumulative effect of his counsel's failure to object to the prosecutor's improper questioning and comments constituted ineffective assistance of counsel. The majority of unobjected-to remarks concern the direct questioning of defense witnesses as to whether the State witnesses were lying and direct comments that defense witnesses had a motive to lie. Correspondingly, the prosecutor suggested the law enforcement officers would not lie because it would put their careers at risk. The prosecutor also improperly questioned the defendant about his prior convictions. We find error in two areas, the cumulative effect of which constitutes fundamental error.
"In order for a prosecutor's comments to be deemed prejudicial, they must `vitiate the trial or so poison the minds of the jurors that [the defendant] did not receive a fair trial.'" Gonzalez v. State, 786 So.2d 559, 567 (Fla.2001) (quoting Harris v. State, 742 So.2d 835, 839 (Fla. 2d DCA 1999)). The general rule is that the failure to raise a contemporaneous objection to those comments constitutes a waiver of the right to claim error on appeal. See Brooks v. State, 762 So.2d 879, 898 (Fla.2000). As our supreme court has observed:
[t]he sole exception to this general rule is where the unobjected-to comments rise to the level of fundamental error. In order for an error to be fundamental *276 and justify reversal in the absence of a timely objection, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."
Spencer v. State, 842 So.2d 52, 74 (Fla. 2003) (quoting Brown v. State, 124 So.2d 481, 484 (Fla.1960)) (citations omitted).
In a criminal prosecution, "it is an invasion of the jury's exclusive province for one witness to offer his personal view on the credibility of a fellow witness." Boatwright v. State, 452 So.2d 666, 668 (Fla. 4th DCA 1984). Here, the prosecutor five times questioned defense witnesses, including the defendant, about whether certain State witnesses were lying. The prosecutor then commented that the defendant and his witnesses had a motive to be untruthful and asked the jury not to allow them to get away with it. Several times during closing argument, the prosecutor argued the defendant and his witnesses had made up the story.
The number of occasions in which this prosecutor resorted to the suggestion that the witnesses were lying borders on the line of impropriety. However, it is not improper for a prosecutor to raise the credibility of witnesses and allow the jury to decide the ultimate issue. Craig v. State, 510 So.2d 857, 865 (Fla.1987) ("When counsel refers to a witness or a defendant as being a `liar,' and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence.") Here, the evidence was in conflict, either the defendant rode the sports bike or he did not. Thus, the evidence gave rise to the prosecutor's questions and comments. We find no error here.
However, when the prosecutor correspondingly advised the jury that the officers would not lie because they would not want to risk their careers, the line of impropriety was crossed. "It is . . . improper for the state to vouch for the credibility of a police officer by arguing that the jury should believe police officers solely because they are police officers." Johnson v. State, 801 So.2d 141, 142 (Fla. 4th DCA 2001). "This court has repeatedly condemned comments that the jury should believe a police officer because the officer would not put his or her career on the line by committing perjury." Sinclair v. State, 717 So.2d 99, 100 (Fla. 4th DCA 1998).
Here, on at least two occasions, the prosecutor argued the officers would not lie because they would not risk their careers as law enforcement officers. The prosecutor also told the jury the officers could be believed because they were police officers. These comments were improper. See Johnson, 801 So.2d at 142. This mistake was compounded when the State improperly questioned the defendant about his prior felony convictions, including a prior conviction for driving with a suspended license.
The State may impeach a witness by use of prior convictions. See Mosley v. State, 739 So.2d 672, 676 (Fla. 4th DCA 1999). However, specific guidelines must be followed. First, the State may inquire if the witness has ever been convicted of a felony. Id. If the witness answers in the affirmative, the State may inquire into the number of times the witness has been convicted of a felony and if the witness has ever been convicted of a misdemeanor involving dishonesty or false statement. Id. "The general rule is that `[i]f [the witness] denies the conviction, the opposing party may produce the record of the conviction. In either event, the inquiry must stop at *277 that point. The matter may not be pursued to the point of naming the crime.'" Id. (quoting Kyle v. State, 650 So.2d 127, 127 (Fla. 4th DCA 1995)).
Here, on direct examination, the defendant admitted to two or three prior felony convictions. He reaffirmed this information on cross-examination. After a bench conference, the prosecutor asked the defendant if he had been convicted of four specific felonies, each time identifying the date and name of the felony. The defendant admitted to them, including a conviction for driving while his license was revoked as a habitual traffic offender.
In this case, the individual errors separate and apart from one another would not rise to the level of fundamental. However, this case turned entirely on the credibility of the witnesses in a classic conflict of the facts. Under these circumstances, the cumulative effect of the prosecutor's continuous labeling of the defense witnesses as liars, coupled with the prosecutor's repeated suggestion that the law enforcement officers would not jeopardize their careers, and topped with improper impeachment of the defendant regarding his prior convictions resulted in fundamental error. Cochran v. State, 711 So.2d 1159, 1163 (Fla. 4th DCA 1998) (multiple improprieties in a prosecutor's closing argument may reach "the critical mass of fundamental error.")
We therefore reverse and remand the case for a new trial.
GUNTHER and HAZOURI, JJ., concur.