PER CURIAM. Derrick Tyrone Smith, a prisoner under sentence of death, appeals two circuit court orders denying his successive motions for postconviction relief filed under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons we explain,, we affirm the circuit court’s orders denying relief. L BACKGROUND Smith was convicted of and sentenced to death for the March 21, 1983, first-degree murder of Jeffrey Songer, a cab driver in St. Petersburg, Florida. Smith was initially tried, convicted, and sentenced to death in 1983, but we reversed the conviction and sentence on appeal and remanded for a new trial because of the admission of improper "comments on Smith’s right to remain silent and a statement Smith made to a detective after he invoked his right to remain silent. Smith v. State, 492 So.2d 1063, 1065-67 (Fla. 1986). In 1990, Smith was again tried, convicted, and sentenced to death, and we affirmed the conviction and sentence on appeal after the retrial. Smith v. State, 641 So.2d 1319 (Fla. 1994). We also affirmed the denial of Smith’s initial motion for postconviction relief and denied his petition for a writ of habeas corpus. Smith v. State, 931 So.2d 790 (Fla. 2006). Smith then filed a federal habeas petition in the United States District Court for the Middle District of Florida, which was denied on August 8, 2007. Smith v. Sec’y, Dep’t of Corr., No. 8:06-cv-01330-T-17MAP, 2007 WL 2302207 (M.D. Fla. Aug. 8, 2007), affd in part, vacated in part, remanded, 572 F.3d 1327 (11th Cir. 2009). On appeal, the United States Court of Appeals for the Eleventh Circuit affirmed in part and remanded in part for the Middle District to perform a cumulative materiality analysis of six Brady v. Maryland, 373 U:& 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claims[1] raised in Smith’s initial postconviction 'motion, as required by Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Smith v. Sec’y, Dep’t. of Corr., 572 F.3d 1327, 1352 (11th Cir. 2009). On October 19, 2009, the Middle District, after conducting a cumulative materiality analysis, concluded that Smith was not entitled to habeas relief. Smith v. Sec’y, Dep’t of Corr., No. 8:06-cv-1330-T-17MAP, 2009 WL 3416775 (M.D. Fla. Oct. 19, 2009), vacated and remanded, No. 10-11562, 2011 WL 4810173 (11th Cir. Oct. 12, 2011). On July 2, 2007, while his federal habeas petition was pending, Smith filed a successive rule 3.851 motion for postconviction relief, which was summarily denied by the postconviction court. On appeal in 2011, we reversed the summary denial of Smith’s successive motion and remanded the case to the circuit court for an evidentiary hearing on “Smith’s allegations that (1) letters from the Federal Bureau of Investigation regarding expert testimony on comparative bullet lead analysis [(CBLA)] offered at his retrial constituted newly discovered evidence and (2) the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose information regarding trial witness Priscilla Walker.” Smith v. State, 75 So.3d 205, 206 (Fla. 2011). We also remanded the six Brady claims identified by the Eleventh Circuit for consideration under the cumulative materiality analysis required by Kyles, in light of the Eleventh Circuit’s 2009 decision, in which the Eleventh Circuit determined that the Brady claims, which were also raised in Smith’s federal habeas petition, “involve[d] favorable evidence that was actually . suppressed,” Smith, 572 F.3d at 1348. See Smith, 75 So.3d at 206. And in light of our 2011 remand, the Eleventh Circuit vacated the Middle District’s 2009 order determining that Smith was not entitled to habeas relief after a cumulative materiality analysis of the six remanded Brady claims and again remanded with instructions for the district court to hold the federal habeas proceeding in abeyance pending the completion of the state collateral proceedings and this appeal from those proceedings. Smith v. Sec’y, Dep’t of Corr., No. 10-11562, 2011 WL 4810173, at *1 (11th Cir. Oct. 12, 2011). After this Court’s remand in 2011, the postconviction court held an evidentiary hearing on Smith’s newly discovered evidence and Brady claims and thereafter denied relief. During the pendency of the remand, on August 13, 2013, Smith filed another successive postconviction motion in the circuit court, which was summarily denied on November 18, 2013. Smith now appeals these orders denying relief. II. ANALYSIS Smith argues that the postconviction court erred in failing to conduct its cumulative materiality analysis of the Brady claims in accordance with Kyles, that the postconviction court erred in failing to include the State’s failure to disclose Priscilla Walker’s 1988 obstruction conviction in its cumulative materiality analysis, and that the postconviction court erred in failing to conduct its newly discovered evidence analysis in accordance with Jones v. State, 709 So.2d 512 (Fla. 1998), and Swafford v. State, 125 So.3d 760 (Fla. 2013). For the reasons explained below, we affirm the circuit court’s denial of posteon-viction relief. A. Brady Claims Smith argues that the postconviction court erred in failing to employ the proper standard when conducting its cumulative materiality analysis of his Brady claims and to include the State’s failure to disclose Priscilla Walker’s misdemeanor conviction for obstruction in its cumulative materiality analysis. We disagree. The Supreme Court has held that the “suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment.” Brady, 373 U.S. at 87, 83 S.Ct. 1194. “There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.” Stridden v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). To establish prejudice, the defendant must demonstrate that the suppressed evidence is material. “[Ejvidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In other words, the question is whether “the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.” Kyles, 514 U.S. at 435, 115 S.Ct. 1555. In making the materiality determination, a court must first “evaluate the tendency and force of the undisclosed evidence item by item” before separately “evaluat[ing] its cumulative effect.” See id. at 436 n.10, 115- S.Ct. 1555 (“We evaluate the tendency and force of the undisclosed evidence item by item; there is no other way. We evaluate its cumulative effect for purposes of materiality separately and at the end of the discussion .... ”): “Considering the undisclosed evidénce cumulatively means adding up the force of it all and weighing it against the totality of the evidence that was introduced at the trial.” Smith, 572 F.3d at 1334. “A ‘reasonable probability’ of a different result exists when the government’s evidentiary sup-pressions, viewed cumulatively, undermine confidence in the guilty verdict.” Id. (citing Kyles, 514 U.S. at 434, 436 & n.10, 437, 115 S.Ct. 1555). In addition to the six Brady claims that were remanded for consideration under the Kyles cumulative materiality analysis, the postconviction court found a seventh Brady violation. The postconviction court concluded that Priscilla Walker had a 1989 shoplifting conviction under the alias Priscilla Smith that was suppressed by the State and favorable to Smith because it was “somewhat impeaching.” Although the court did not find that the failure to disclose the shoplifting conviction was by itself sufficiently material to undermine confidence in the guilty verdict, it did consider this nondisclosure cumulatively with the other six Brady claims that were remanded for consideration in a cumulative materiality analysis. The postconviction court also considered the seven Brady claims in conjunction with the newly discovered CBLA evidence. The postconviction court concluded that “[a]fter weighing the evidence presented at trial and adjusting for the new and withheld evidence” its “confidence in the guilty verdict ha[d] not been undermined.” As did the postconviction court, we adopt the Eleventh Circuit’s item by item analysis of the six remanded Brady claims. See Smith, 572 F.3d at 1342-46. As to the seventh Brady claim, Walker’s ,1989 shoplifting conviction, we agree with the post-conviction court’s conclusion that the fact of the conviction standing alone is not material. We also agree that because the conviction was not disclosed and could have been used to impeach Walker under section 90.610(1), Florida Statutes (1989),[2] the postconviction court properly considered it along with the other six Brady claims and the newly discovered CBLA evidence in the cumulative materiality analysis. The postconviction court properly considered the collective force of the new and undisclosed evidence and weighed it against the totality of the evidence that was presented at the trial. We find no error in the postconviction court’s analysis and agree that taking the collective impact of all the suppressed evidence and the newly discovered evidence and weighing it against the totality of the evidence that was introduced at the trial does not put the whole case in such a different light as to undermine confidence in the verdict. Smith also asserts that the post-conviction court erred in failing to include the State’s failure to disclose Walker’s 1988 misdemeanor obstruction conviction in its cumulative materiality analysis. On June 27, 1988, Walker and her half brother, Henry Cummings, were arrested in connection with a single incident. Walker was charged with obstruction. Cummings, who used the name Marcus White for the arrest, was charged with disorderly con-, duct. Cummings pleaded no contest the following day and was sentenced to time served and released. Walker pleaded no contest to the obstruction charge on August 1, 1988, and the sentence imposed at that time was to “pay [a] fíne and costs in the amount of $100.00 to be taken out of [her] bond.” On August 5, 1988, Walker was interviewed by Scott Hopkins, an investigator with the State Attorney’s Office. During that interview, Walker told Hopkins that Smith had confessed to her shortly after the murder on March 21,1983, that he had just “shot a cracker in the back.” Walker had not previously advised .law enforcement of Smith’s confession. Smith argues that had the defense known of the obstruction conviction, the timing of the arrest, and the involvement of Walker’s brother as the co-defendant, Mr. Smith’s trial counsel could have used the undisclosed information to suggest that in late July and early of [sic] 1988 when Walker told law enforcement of Mr. Smith’s alleged statement to her in 1983 (which she had not previously revealed), she had reason to seek to curry favor with the State [[Image here]] Appellant’s Initial Brief at 71, Smith v. State, - No. 13-2246 (Fla. June 26, 2014). We disagree. Because Walker’s obstruction charge had already been resolved at the time she revealed Smith’s confession, it did not serve as a reason for her to curry favor with the State and would not have served to impeach. her testimony at Smith’s trial. Smith further argues that whjen Walker first told the State , that Smith confessed the murder to her, she could haye been attempting to curry favor for her brother’s disorderly conduct charge. Smith states: For exactly the same reason that the Eleventh Circuit ruled that the note discussing [Melvin] Jones’s fear of a sexual abuse allegation was undisclosed impeachment, the existence of the .obstruction case against her and the disorderly conduct case against her brother could have been used as impeachment regarding her statement in late July and/or early August incriminating Mr. Smith in the homicide. Appellant’s Initial Brief at 73, Smith v. State, No. 13-2246 (Fla. June 26,, 2014). While we recognize that the Eleventh Circuit “has held that evidence of motivation to testify, especially for key prosecution witnesses, is impeachment evidence that must be disclosed,” Smith, 572 F.3d at 1343, there is no evidence here to support Smith’s claim that on August 5,1988, when Walker advised law enforcement of Smith’s confession, she was motivated by a desire to obtain a favorable resolution of her brother’s disorderly conduct charge. Cummings testified at the evidentiary hearing that his disorderly conduct charge-was resolved the day after his arrest in June 1988. Thus, there is no support for' Smith’s claim that. Walker’s obstruction charge or Cummings’. disorderly conduct charge were evidence of Walker’s motivation to testify. Smith also asserts in a footnote in his “Statement of the Case” that at the time Walker advised the State, of Smith’s confession “the charges against her brother remained pending” and thereafter “her brother was able to plead out to probation.” Appellant’s Initial Brief at 18 n.23, Smith v. State, No. 13-2246 (Fla. June 26, 2014). But Smith fails to point to anything in the record indicating that Cummings had charges pending against him on August 5, 1988, to which he thereafter “was able to plead out to probation.” In fact, the record seems to refute this claim; Cummings testified that after he resolved the disorderly conduct charge in June 1998, he was arrested in another criminal case and sentenced to prison. Further, because Walker’s obstruction conviction was not a crime of dishonesty or false statement, it could not have been used to impeach her credibility at Smith’s trial under section 90.610(1), Florida Statutes, or any other provision of the Florida Evidence Code. There is simply no record support for Smith’s claim that disclosure of Walker’s obstruction conviction would have allowed him to impeach Walker at trial or provided him with evidence that he could use to “suggest” that her testimony was motivated by a desire to curry favor for her own or her brother’s pending criminal charges. Accordingly, the postconviction court did not err in omitting the State’s failure to disclose the obstruction conviction from its cumulative materiality analysis.[3] B. Newly Discovered Evidence Regarding CBLA At Smith’s trial, the State presented physical evidence and expert testimony linking Smith to the murder! FBI Agent Robert Sibert testified that Smith’s jeans pocket contained lead residue consistent with bullets. The State put into evidence a bullet fragment taken from Songer’s clothing. Two other FBI agents, Asbery and Havekost, were qualified as experts and testified that the bullet fragment, according to lead compositional analysis, “matched” bullets from the ammunition box Roy Cone[, Smith’s uncle,] had purchased in 1972 and still possessed at the time of the murder. The State used this evidence to argue that it was Smith who had stolen his uncle’s gun and some bullets that had come from the box— .bullets that were used to Mil the victim. .The gun itself,was never found. ; ... Smith, 572,F.3d at 1331-32. Smith’s newly discovered evidence claim is -predicated on letters sent by the FBI to the State in 2008 and 2009 regarding the CBLA testimony presented at Smith’s trial. The letters indicated that in his testimony at Smith’s trial, Agent Havekost overstated the significance of the results of the CBLA. At the evidentiary hearing held on -this claim in 2013, Smith presented testimony from three expert witnesses regarding his CBLA newly discovered evidence claim; After the evidentiary hearing, the postconviction court- denied relief on this claim. • In Jones, 709 So!2d at'521, this Court set forth the test for a conviction to be set aside on the basis of newly discovered evidence as follows: First, in order to be considered newly discovered,' the evidence “must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence.” Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. To reach this conclusion the trial court is required to “consider all newly discovered evidence which would be admissible” at trial and then evaluate the “weight of both the newly discovered evidence and the evidence which was introduced at the trial.” (Alteration in original) (citations omitted). In Swafford, 125 So.3d at 775-76, we explained the Jones analysis further as follows: The Jones standard requires that, in considering the effect of the newly discovered evidence, we consider all of the admissible evidence that could be introduced at a new trial. In determining the impact of the newly discovered evidence, the Court must conduct a cumulative analysis of all the evidence so that there is a “total picture” of the case and “all the circumstances of the case.” As this Court held in Lightbourne[ v. State, 742 So.2d 238, 247 (Fla. 1999) ], a trial court must even consider testimony that was previously excluded as procedurally barred or presented in another proceeding in determining if there is a probability of an acquittal. ... [T]his requirement not ■ only is consistent with our precedent, but is also consistent with logic, as the Jones standard focuses on the likely result that would occur during a new trial with all admissible evidence at the new trial being relevant to that analysis. (Citations omitted.) Here, the postconviction court concluded that the letters from the FBI qualified as newly discovered under the first prong of the Jones test, but they did not met the second prong of the Jones test. The court explained: At trial, the State relied on the CBLA evidence to supplement a case otherwise based on eyewitness testimony of several witnesses, whose credibility the jury had the opportunity to evaluate, as well as other circumstantial evidence. Certainly, in light of the post-trial developments regarding CBLA, Agent Have-kost’s trial testimony might well have been impeached with the new evidence regarding the reliability of CBLA, if its admission was even allowed. While the erosion of CBLA was unknown at the time of trial and the fact that potentially inaccurate testimony became a feature of the Defendant’s 1990 trial, the Court cannot say that the absence of the CBLA evidence or compelling impeachment of the CBLA evidence would produce an acquittal on retrial. We agree that even the complete absence of CBLA evidence at a retrial would not probably produce an acquittal. There is ample non-CBLA evidence in this case. At Smith’s 1990 retrial, Smith’s uncle, Roy Cone, testified that he owned a .38 Smith & Wesson blue steel handgun with a brown handle from 1972 to 1983. The gun went missing sometime between January and March of 1983. Smith had previously lived at Cone’s house and had last visited in February or March of 1983, around the time the gun went missing. Carolyn Mathis, James Matthews, Priscilla Walker, Derrick Johnson, and Ernest Rouse, all testified that Smith was in possession of a gun on March 20, 1983. Rouse described the gun as a “blue/black revolver with a brown handle.” Johnson described the gun as a .38-caliber revolver with a six-inch barrel, a brown handle, and a black cylinder. Carolyn Mathis described the gun as “shiny” and said that Smith was trying to sell it for $50. Both Melvin Jones and Johnson, Smith’s codefendant, testified that they saw Smith shoot the victim. Jones testified that he saw Smith flee the scene with the gun, which he identified as a .32- or .38-caliber revolver. The night of the murder, Smith told Regina Mathis that he was going to “hustle” some money. He also told James Matthews that he intended to get some money that night. Rouse said that Smith and Johnson were together on the night of the murder, and both Mathis sisters saw a man matching Johnson’s description with Smith that night. No one saw Johnson with a gun. Johnson testified that he and Smith formulated several different plans for committing an armed robbery the night of the murder before eventually settling on a plan to call a cab and rob the driver. Johnson testified that Smith used the phone at the Hogley Wogley BBQ to call a cab shortly after midnight on March 21, 1983. Fingerprint evidence confirmed that Smith used the phone at the Hogley Wog-ley. Johnson said that the plan was for him to ride in the front seat of the cab and for Smith to ride in the back and to hold the gun on the driver while Johnson took his money. David McGruder, the cook at the Hogley Wogley, testified that he saw two • men matching the descriptions of Smith and Johnson at the Hogley Wogley that night. McGruder also testified that he saw the man matching Smith’s description use the phone and enter the back seat of the cab when it arrived, although he was not certain that the man was Smith. Walker testified that after the murder, between midnight and 1 a.m., Smith returned'to her house and told her that he had just “shot a cracker in the back” because “he act[ed] like he didn’t want to give up the money.” Matthews said that he arrived back at Walker’s house between midnight and 2 a.m. and Smith told him that he “might have shot someone.” Marcel DeBulle, a Canadian tourist, testified that Smith robbed him in his motel room around noon on March 21, 1983, about twelve hours after the murder. De-Bulle said that Smith held a revolver with a shiny, blue, steel barrel to his head. Fingerprints on DeBulle’s briefcase, which Smith handled during the robbery, were matched to Smith.[4]' Because there is ample non-CBLA evidence that would be admissible at a retrial to establish Smith’s role in Songer’s murder and his identity as the shooter, we cannot say that the exclusion of the CBLA evidence at a retrial would probably produce an acquittal. This is true even when the exclusion of the CBLA evidence, is considered cumulatively with the seven Brady violations discussed herein and Smith’s various Brady, Giglio, and newly discovered evidence claims that were previously raised and found barred or otherwise denied. III. CONCLUSION . For the reasons stated above, we affirm the postconviction court’s orders denying Smith’s successive motions for postconviction relief. It is so ordered. LABARGA, C.J., and LEWIS, CANADY, POLSTON, and LAWSON, JJ., concur. PARIENTE, J., dissents with an opinion. QUINCE, J.,’recused. . The six Brady claims are: (1) Melvin Jones sought help from the prosecutor with the probation violation and grand theft charges against him; (2) Melvin Jones, fearing arrest, sought help from the prosecutor in regard to the sexual abuse allegations his daughter -was making against him; (3) one or more police reports indicated that Melvin Jones had initially been considered as a suspect in 1983; (4) a prosecutor’s synopsis of an, interview of David McGruder and some police reports cast doubt on McGruder’s identification of Smith; (5) a prosecutor’s note indicated that Jones and Johnson had met briefly in a holding cell before the 1983 trial; and (6) several reports showed that .Priscilla Walker’s statement, to the police, about when Smith was. at her house conflicted ^ with statements by others about where he was during that time. Smith v. State, 75 So.3d 205, 206 (Fla. 2011) (quoting Smith v. Sec’y, Dep’t of Corr,, 572 F,3d 1327, 1348 (11th Cir. 2009)). . Section 90.610(1), Florida Statutes, provides that evidence that a witness has been convicted of a crime may be used to attack the credibility of a witness, if the crime was a felony or a crime involving dishonesty or a false statement. A theft, such as shoplifting, is a crime of dishonesty. See State v. Page, 449 So.2d 813, 815 (Fla. 1984) ("It is our view that the commission of. petit theft, or any other offense falling within the scope of chapter 812, Florida Statutes (1981), necessarily involves ‘dishonesty’ so as to bring any conviction for such a crime within the scope of subsection 90.610(1).” (Footnote omitted.)). . Smith also claims that disclosure of the obstruction conviction would have led the defense to the discovery that Walker had a brother from whom defense counsel could have learned that Walker told her brother that she did not believe that Smith committed the murder. However, this claim does not establish a Brady violation. The fact that Walker had a brother was not suppressed by the State.- . Smith was convicted of the armed robbery in a separate proceeding and is serving a life sentence for it.